Adam W. Smith, Appellant, *v.* The City of Albany, Respondent.

An employment by or under authority of the common council of a city of one of its members to render services for the city is against public policy, and an action cannot be maintained against the city to recover for services rendered.

The act of 1843 (chap. 57, Laws of 1843) making it unlawful for a member of a common council to become a contractor under a contract authorized by the common council is but declaratory of the common law, and is not to be construed strictly.

(Argued September 20, 1874; decided January term, 1875.)

Appeal from judgment of the General Term of the Supreme Court in third judicial department, affirming a judgment in favor of the defendant, entered upon the report of a referee. (Reported below, 7 Lans., 14.)

This action was brought to recover for the use of plaintiff's horses and carriages, hired by a committee of the defendant's common council.

At a meeting of the common council of the city of Albany (of which the plaintiff was a member), in June, 1869, a resolution was adopted, for which plaintiff voted, to appropriate $2,500 for the purpose of defraying the expenses of celebrating the then next fourth of July. Under this resolution a committee of the members of the council was appointed, under whose employment the plaintiff furnished horses and carriages which were used in the celebrating procession, and otherwise, in conducting and carrying on the celebration of that day, the fair value of the use of which was $139. Upon this state of facts the referee held and decided that such employment was against public policy and void, and, thereupon, ordered judgment in favor of the defendant for costs.

*Amasa J. Parker* for the appellant. Plaintiff's claim was not in violation of the statute forbidding an alderman to be a contractor. (47 How. Pr., 28; Laws 1874, chap. 323, p. 400; Laws 1854, chap. 329; Laws 1870, chap. 55.)

*Grenville Tremain* for the defendant. This action cannot be maintained as it is prohibited by statute. (Laws 1843, chap. 57, p. 36; 3 Edm. Stat., 303; *Donovan* v. *Mayor, etc.,* 33 N. Y., 292; Laws 1830, p. 126, §§ 2, 7, 11; *Bell* v. *Quin,* 2 Sandf., 146; *Best* v. *Bander,* 29 How., 489; *Stewartson* v. *Lathrop,* 12 Gray, 52; *Beman* v. *Tagnot,* 5 Sandf., 153; *Cundell* v. *Dawson,* 4 M., Gr. & S. [56 E. C. L.], 376, 397–400; *Little* v. *Pool,* 9 B. & C. [17 E. C. L.], 192; *Ritchie* v. *Smith,* 6 M., G. & S. [60 E. C. L.], 462, 473–477; *Foster* v. *Taylor,* 15 B. & Ad., 887.) The contract was void as against public policy. (*N. Y. C. Ins. Co.* v. *Nat. Prot. Ins. Co.,* 14 N. Y., 85–91; *Sherwood* v. *Sar., etc.,* 15 Barb., 650; *Bridenbecker* v. *Lowell,* 32 id., 11; *Conkey* v. *Bond,* 34 id., 276; 36 N. Y., 427; *Jewett* v. *Miller,* 10 id., 402; *Hartshorne* v. *Umire,* 36 id., 179; *Colburn* v. *Morton,* 3 Keyes, 296; *Coleman* v. *Second Ave. R. R. Co.,* 6 Tr. App., 146; 38 N. Y., 201; *McDonald* v. *Lard,* 26 How., 404; *Pitt* v. *Washington,* 41 Barb., 353; *Bruce* v. *Davenport,* 36 id., 349; *Gould* v. *Gould,* id., 270; *Cowing* v. *Green,* 45 id., 585; *Wardens, etc.,* v. *Rector,* 31 How., 381; *Butts* v. *Wood,* 37 N. Y., 317.)

GRAY, C. The common council of the city of Albany, of which the plaintiff was a member, were the agents of the city, and while holding that relation to it each member of that body was under such an obligation of absolute loyalty to the interests of the city as prohibited any member of the board from entering into any arrangement with his associates by which his individual interest could come in conflict with the interests of his constituents, who are entitled exclusively to such an exercise of his caution and judgment in their behalf as an ordinarily prudent man would exercise in his own business. In bargaining for the city he could not be one of a party, acting as an employer, and become himself, by the same bargain, an employe. The rule upon this subject, as well as the reason for it, is so clearly stated by the late Justice STORY in his treatise on Agency, as to render a restatement of it in

the words of its learned author quite appropriate. "It may," he said, "be correctly said with reference to Christian morals, that no man can faithfully serve two masters whose interests are in conflict. If, then, the seller were permitted, as the agent of another, to become the purchaser, his duty to his principal and his own interest would stand in direct opposition to each other; and thus a temptation, perhaps in many cases too strong for resistance by men of feeble morals or hackneyed in the common devices of worldly business, would be held out, which would betray them into gross misconduct and even into crime. It is to interpose a preventive check against such temptations and seductions that a positive prohibition has been found to be the soundest policy, encouraged by the purest principles of Christianity. This doctrine is well settled at law. And it is by no means necessary in cases of this sort that the agent should make any advantage by the bargain. Whether he has or not the bargain is without any obligation to bind the principal." While efforts have been made to evade this rule, its justice has never been questioned; it is a rule of necessity, which the test of experience has rendered inflexible. The recent case of *Collier* v. *Munn* (41 N. Y., 143), is not in any respect distinguishable in principle from the one now under consideration, and affords, perhaps, a more striking example of the rule, in its application to this case, than any of the modern cases. There the co-executors of Collier not only requested him, in his capacity as counselor-at-law, to perform certain services for the estate of which he was executor, but assured him that he would be entitled to a just compensation therefor out of it; he rendered the services, both meritorious and useful to the estate, and yet it was held, that for the services thus performed he was without redress; that, notwithstanding the request and assurance of his co-executors and the important and meritorious services performed by him for the estate, he was not entitled to receive from it compensation for such services. The services rendered were not such as an executor was bound to render; but a service, not only the employment but the com-

pensation for which, as an executor, it was his duty to scruti-
nize for the single purpose of seeing to it that no improper
employment or allowance was made for service rendered.  In
this, if he became an employe instead of a stranger, his inter-
est might be opposed to his duty, and this brought the case
within the prohibition founded upon the principle of public
policy.

The act of 1843 (Session Laws of that year, p. 36) making
it unlawful for a member of any common council of any
city in this State to become a contractor under any con-
tract authorized by the common council, and authorizing
such contracts to be declared void at the instance of the city,
has not wrought a change in the rule referred to; it is, so far
as it goes, simply declaratory of the law as it existed pre-
vious to its passage.  It does not encroach upon the common
law, and is not, therefore, to be construed strictly.

A second ground urged in defence of this action is, that
the resolution to expend $2,500 in defraying the expenses of
celebrating the Fourth of July, was unauthorized and void;
as this judgment must be affirmed upon the ground already
stated, and as the power to pass such a resolution is impli-
edly conferred in section 2 of title 6 of the amended charter
of that city, passed March 16th, 1870 (Session Laws of that
year, p. 175), it becomes a matter of no practical importance
to determine whether, as the charter stood in 1869, it con-
ferred so much more power upon the common council of the
city of Albany than was conferred upon the common council
of the city of Buffalo when the case of *Hodges* v. *The City
of Buffalo* (2 Denio, 110) arose.

This judgment must be affirmed.

All concur.

Judgment affirmed.