SANTA ANA WATER CO. v. TOWN OF SAN BUENAVENTURA et al.

(Circuit Court, S. D. California. January 14, 1895.)

No. 461.

1. MUNICIPAL CORPORATIONS—OFFICERS—VACANCIES.
    The charter of the town of S. provided that its officers should consist of a board of five trustees, elected by popular vote, and a treasurer, clerk,

and others, who should be appointed by the trustees, and should perform various duties appropriate to their offices. The charter was silent as to whether the clerk and other officers should be appointed from the board of trustees or outside that body. A general act, applicable to the town, declared the causes which should create a vacancy in office, not including incompatibility of offices or acceptance of another office. *Held*, that the appointment to and acceptance of the offices of clerk and treasurer of the town by members of the board of trustees did not vacate their offices as trustees.

**2. SAME—FRAUD—TRUSTEES DEALING WITH THEMSELVES.**
A contract was made between the trustees of a town and A. and two associates for the supply of the town with water, three out of five trustees being present and participating in the making of the contract. One of these three trustees was jointly interested with A. and his associates in the subject-matter of the contract. *Held*, that such contract, both by the common law and by the statute of California prohibiting a trustee from contracting with himself (Pol. Code, §§ 920–922), was absolutely void.

**3. SAME—RATIFICATION BY LEGISLATURE.**
After the passage of the ordinance by which such contract was made, the legislature passed an act approving and ratifying the same, the fraud, however, not being disclosed to the legislature at the time. *Held*, that though the legislature could cure irregularities, and confirm proceedings which, without confirmation, would be void, because unauthorized, it did not, by the passage of the act referred to, ratify the undisclosed fraud.

This was a suit by the Santa Ana Water Company against the town of San Buenaventura and others for the enforcement of a contract. A demurrer to the bill was overruled. 56 Fed. 339. The defendants answered, and the cause is now heard on the pleadings and proofs.

Lamme & Wilde, for complainant.
W. E. Shepherd and George J. Denis, for defendants.

ROSS, District Judge. When this case was before the court on demurrer to the bill, it was held that the contract entered into January 4, 1869, between the defendant corporation and Jose De Arnaz, Victor Ustassaustegui, and Francisco Molleda, in so far as it reserved to those parties the "unrestrained right to establish such rates for the supply of water to private persons as they may deem expedient, provided that such rates be general," and subject, also, to the implied condition that the rates be reasonable, was a valid contract in the hands of Arnaz and his associates, and passed by assignment to the complainant corporation. The facts upon which those rulings were based were admitted by the demurrer filed by the defendants to the bill. Subsequently, defendants answered the bill, and, upon the issues thus joined, proofs were taken, and the case has been heard on its merits. Except in respect to two affirmative defenses, the proofs establish the same facts as formed the basis of the rulings upon demurrer; and as I am satisfied of the correctness of the conclusions then reached, and with the reasons given in support of them, it is not necessary to go over that ground again. The case on demurrer will be found reported in 56 Fed. 339.

The affirmative defenses referred to are the following: The board of trustees of the defendant corporation, under the law creating it, consisted of five members, but three of whom—Tico, Chateneauf,

and Escandon—were present and authorized the execution of the contract in question. Tico had previously been elected clerk of the town, and accepted the position, and Chateneauf had been elected, and accepted the position of, treasurer thereof, each of whom, the defendants contend, thereby vacated his office as trustee, which, if true, left only one member of the board of trustees—Escandon—taking part in the execution of the contract on the part of the town. The answer also alleges that Chateneauf had a direct pecuniary interest with Arnaz, Ustassaustegui, and Molleda at the time of the making of the contract, and that other trustees had such adverse interests at the time of its subsequent attempted ratification which rendered their acts on behalf of the town in respect to the contract void and of no effect.

In respect to the first of these defenses, it is contended on behalf of the defendants that there is such incompatibility between the office of trustee and clerk and trustee and treasurer of the town as rendered the acceptance by Tico of the clerkship a vacation of his office of trustee, and a like vacancy of Chateneauf's office of trustee by his acceptance of the position of treasurer. As pointed out in the former opinion herein, the defendant corporation is a municipal corporation, created by an act of the legislature of the state of California entitled "An act to incorporate the town of San Buenaventura," approved March 10, 1866 (St. 1866, p. 216), and was thereby invested with all the rights and privileges conferred by, and was made subject to all liabilities, restrictions, and provisions of, an act entitled "An act to provide for the incorporation of towns," approved April 19, 1856 (St. 1856, p. 198), so far as the provisions of that act may be consistent with the provisions of that of March 10, 1866. It is provided by the act creating the defendant corporation that its officers shall consist of a board of five trustees, —a treasurer, a clerk (who shall be ex officio assessor), a marshal (who shall be ex officio collector), an attorney, and a surveyor; and with the exception of the first board of trustees, designated by the act itself, it provides that they shall be elected by the qualified electors of the town, and shall hold their office for the term of two years, and until their successors are elected and qualified. It is also provided that the treasurer, clerk, marshal, collector, attorney, and surveyor shall be appointed by the trustees, and shall hold their office for two years, unless sooner removed for misconduct or neglect of official duties. The seventh section of the act makes it the duty of the clerk to keep the books, papers, and documents of the board belonging to the town, to attend all meetings of the board of trustees, and keep a record of all its proceedings, sign all warrants issued by order of the board, and keep an accurate account in a suitable book of all such warrants, their number and date, and assess all taxes levied by the board of trustees. By the eighth section it is declared that the treasurer shall take charge of all moneys of the town, pay all warrants, which shall first be signed by the clerk and countersigned by the president, and keep a correct account of all moneys received and paid out by him, and make

due report thereof once a month to the board. By the eleventh section it is provided that the trustees shall elect one of their number president of the board, and that the president chosen shall act as town recorder. Jurisdiction over certain offenses committed within the corporate limits is committed to him, and he is authorized to receive in such cases the same fees as were then allowed by the laws of the state to justices of the peace. The fifteenth section of the act provides: "The compensation of the board of trustees shall be one dollar per annum. The officers appointed by the board of trustees shall receive for their services such sums as the board may direct."

It will be observed that, while the act creating the defendant corporation provides that the trustees shall appoint a clerk and treasurer, it is silent as to whether such appointments shall be made from their own number or from without the board. No special provision is made therein regarding vacancies in the office of trustee, but the general act for the incorporation of towns of April 19, 1856, the provisions of which, except where inconsistent, are expressly made applicable to the defendant corporation by the act creating it, provides what shall cause a vacancy in the office of trustee; that is to say, removal from the town, absence therefrom for 30 days after election, and, if bond is required, neglect to file such bond within 10 days after election. St. 1856, p. 198. And the act of the legislature of the state of April 22, 1863, regarding offices and officers (Hitt. Gen. Laws, p. 693), declared what should constitute a vacancy in office, among which causes are not enumerated incompatibility of offices or acceptance of another office. This statutory enumeration of causes constituting a vacancy in office has been held by the supreme court of the state to be exclusive (Rosborough v. Boardman, 67 Cal. 118, 7 Pac. 261, and cases there cited), and settles the question in relation to the alleged vacancies in the office of trustee of the town of San Buenaventura at the time of the making of the contract in question against the contention of defendants, regardless of any other consideration; for it cannot be doubted that the qualifications prescribed by the state for those who shall be eligible to office under it, or under any of its subordinate subdivisions, or as to what shall constitute a vacancy in any of such offices, are conclusive upon the federal courts.

A more serious question is that raised by the allegations of the answer to the effect that Chateneauf had a direct pecuniary interest with Arnaz, Ustassaustegui, and Molleda at the time of the making of the contract in question; and that on October 28, 1872, when an ordinance was adopted by the board of trustees of the town purporting to ratify and confirm the contract and its subsequent assignment to the then existing complainant corporation, McKeeby and Molleda were members of the board of trustees; that their votes were essential to the adoption of the ordinance; that they voted for it, and thus passed it; and that they were, at the same time, holders of stock in the water company. The evidence shows that but three of the five members of the board of trustees—namely, Tico, Chateneauf,

and Escandon—participated on the part of the town in making the contract. It further shows that Chateneauf, at the same time, held for Escandon, who was the president of the board, an equal interest with Arnaz, Ustassaustegui, and Molleda in the subject-matter of the contract. Such being the facts, I am of the opinion that the contract was absolutely void, and not merely voidable. The common law, on grounds of public policy, prohibits a trustee from contracting with himself. So does the statute of California. Hitt. Gen. Laws, p. 699; Pol. Code, §§ 920–922. The state statute referred to contains the further provision that every such contract may be avoided by any party interested therein, except the officer or officers making the contract or having an interest in it; and it is contended for the complainant that the effect of this provision of the statute is to remove from such contracts the character of absolute nullity, and make them voidable merely. A similar statute of New York was held by the commission of appeals of that state to be merely declaratory of the common law so far as it goes, in the case entitled Smith v. City of Albany (61 N. Y. 444). And such is evidently the view taken by the supreme court of California of the California statute; for in Wilber v. Lynde, 49 Cal. 290, where certain trustees of a corporation executed to themselves, on behalf of the corporation, its promissory notes, the supreme court of California held their action contrary to public policy and absolutely void, saying that the case came fully within the doctrine of the preceding case entitled San Diego v. San Diego & L. A. R. Co. (44 Cal. 106). In that case two of the three members of the board of trustees of the city of San Diego, assuming to proceed under an act of the legislature of the state authorizing the president and trustees of the city to donate and convey to the railroad company such parcels of the pueblo lands of the city, not exceeding in amount 5,000 acres, as they might deem advisable, and upon such terms and conditions as they might determine, passed a resolution granting to the railroad company 5,000 acres of the city lands. One of the two trustees at whose instance the resolution was passed was at the time a stockholder in and a director of the railroad company. The court said:

"We do not doubt that a majority of the trustees might execute the power, but the question is whether Sherman, who was a stockholder and director of the railroad company, could be one of that majority. When he entered upon the duties of trustee, his relations to the city became those of an agent to his principal, or of a trustee to his cestui que trust, and, while holding the office, he could do nothing inconsistent with those relations. This is clear upon principle, and rests upon abundant authority. The general principle is that no man can faithfully serve two masters whose interests are or may be in conflict. The law, therefore, will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity. 'It may be regarded,' says Parsons, 'as a prevailing principle of the law, that an agent must not put himself during his agency in a position which is adverse to that of his principal; for even if the honesty of the agent is unquestioned, and if his impartiality between his own interest and his principal's might be relied upon, yet the principal has in fact bargained for the exercise of all the skill, ability, and industry of the agent, and he is entitled to demand the exertion of all this in his own favor.' 1 Pars. Cont. 74. This principle has found expression in a large number of cases, involving a great variety of

circumstances. And it applies equally whether one deals with himself, acting as sole trustee, or with a board of trustees of which he is a member, or with the directors of a corporation of whom he is one."

A similar ruling was made by the same court in the more recent case of Davis v. Mining Co., 55 Cal. 359. The principle governing such cases is applicable alike to all officers and trustees of public and private corporations. 1 Dill. Mun. Corp. § 444. To permit a trustee to convey the interests of his cestui que trust to another, himself thereby securing an undisclosed interest with that other, would be to sanction a violation of the plainest principles of honesty and fair dealing. Such, according to the evidence in this case, was the transaction surrounding and entering into the contract in question, and it was for that reason void ab initio. If it be conceded that a contract so made admitted of ratification, precisely the same reasons which rendered the contract itself a nullity rendered ineffectual the attempted ratification and confirmation of it by the town ordinance of October 28, 1872; for the evidence shows that two of the four trustees voting for that ordinance—namely, McKeeby and Molleda—were, at the time, holders of stock in the complainant water company. That ordinance, by an act of the legislature of the state of California, entitled "An act to re-incorporate and extend the limits of the town of San Buenaventura, state of California, and also to change the name of Canyada street in said town to that of Ventura avenue," approved March 29, 1876 (St. 1875–76, p. 534), was approved and ratified. And prior to that, to wit, on the 29th of March, 1870, a similar act was passed by the legislature ratifying and confirming, in general terms, all ordinances, acts, and proceedings of the board of trustees of the town. While the legislature may cure irregularities, and confirm proceedings which without the confirmation would be void because unauthorized (Mattingly v. District of Columbia, 97 U. S. 690), I do not think it can be properly held that the legislature, by the acts referred to, ratified and confirmed a fraud not disclosed to it. The application of the doctrine of ratification always largely depends upon the circumstances of the case. In speaking of the application of the doctrines of ratification and estoppel, it is said in Morawetz on Private Corporations (section 631a):

"The application of these doctrines necessarily depends in each case upon all the peculiar circumstances. The equity of the case must be determined. It is necessary to consider the character of the act with which it is sought to charge the corporation, the importance of the act, and the degree of publicity which was given to it. The good faith or bad faith of the parties, and their business relations, are also important considerations."

Whether the ordinance in question violated those provisions of the constitution of the United States declaring that no person shall be deprived of his property without due process of law, and securing every person the equal protection of the laws, need not now be determined; since, under the provisions of the state constitution and state statute pursuant to which it was enacted, its functions had ceased long prior to the final submission of this case, the chief object of which evidently was to procure a judicial determination

of complainant's alleged rights under the contract of January 4, 1869. Inasmuch, however, as the defendant trustees are required to fix the rates annually in the month of February, it is perhaps not out of place to call attention to the case of Spring Valley Water-works v. City of San Francisco, 82 Cal. 286, 22 Pac. 910, 1046, in which the supreme court of California, in considering that provision of the state constitution relating to the fixing of water rates, held that the governing body of the municipality has not the right to fix rates arbitrarily, without investigation; and that, while not bound to give notice to a water company of its intention to fix such rates, it is nevertheless in duty bound to make proper efforts to obtain all information necessary to enable it to act intelligently and fairly in fixing the rates, and a failure to do so may defeat its action; that, when the constitution provides for the fixing of rates or compensation, it means reasonable rates and just compensation; and attention also to those decisions of the federal courts in which it is held that the fixing of any such unreasonable rates as amount to a taking of private property without due process of law, or as operate to deprive a party of the equal protection of the laws, are contrary to the provisions of the constitution of the United States, and, in appropriate proceedings, will be declared invalid. Reagan v. Trust Co., 154 U. S. 412, 14 Sup. Ct. 1047; Ames v. Railway Co., 64 Fed. 165, and cases there cited.

From the views above expressed, it results that the bill must be dismissed, at complainant's cost; and it is so ordered.