## PROCEEDINGS FOR ANNEXATION OF TERRITORY TO A MUNICIPALITY.

Common Pleas Court of Ashtabula County.

SHIPBAUGH ET AL v. KIMBALL, RECORDER, ET AL.

Decided, August 15, 1908.

*Annexation—Transcript of Proceedings Must be Filed with City Clerk —Approval of Ordinance Without Validity—Where Mayor has a Considerable Financial Interest at Stake—County Commissioners— Misinterpretation of Judicial Functions of—Injunction—Municipal Corporations—Construction of Statute Relating to Annexation— Organization of Villages and Hamlets.*

1. The requirement of Section 1590 (1536-32) *et seq.*, with reference to filing with the municipal clerk the transcript of the proceedings by the county commissioners upon an application by citizens for the annexation of territory to the municipality, apply under Section 1599 (1536-41) to the annexation of territory upon application of the corporation itself, and injunction will lie to prevent a county recorder, to whom such proceedings have been certified, from making a record thereof.

2. Under Section 125 of the municipal code of 1902, clothing mayors with the impartial and disinterested legislative function of approving or vetoing ordinances, the approval by a mayor of an ordinance authorizing annexation to a municipality of territory in which he has a considerable financial interest is clearly against public policy and invalid.

3. County commissioners exercise a judicial function in acting upon an application for the annexation of territory to a municipality, and where such an application is granted merely because of the passage of an ordinance authorizing the annexation, the commissioners misinterpret and fail to properly exercise their judicial functions, and injunction will lie to prevent the recording of an annexation thus effected; and especially is this true if the ordinance was passed at the suggestion of the commissioners and for the purpose of throwing on council the responsibility for a project to which they were themselves opposed.

4. The granting of an injunction to restrain recording of the annexation of territory to a municipality, because of failure of the county commissioners to give judicial consideration to the questions and interests involved, does not have the effect under Section 1592 (1536-34) of barring further proceedings with reference thereto.

*Herbert Williams* and *Hoyt, Munsell & Hall,* for plaintiffs.
*F. R. Hogue* and *McGiffert & Ullman,* for defendants.

HOLE, J.

In this case the plaintiffs, Fred Shipbaugh et al, have entered suit against Elliott Kimball, as recorder of the county of Ashtabula, seeking to enjoin said official or his successors in office from making a record of certain proceedings for the annexation of territory to the city of Ashtabula.

It is alleged that two of the plaintiffs are residents and freeholders of lands within the territory sought to be annexed, and that the plaintiff, Salisbury, is a resident of the sewer district in the city of Ashtabula lying contiguous to said territory.

The plaintiffs claim the right to maintain this proceeding by virtue of certain sections of the Ohio statutes relating to the incorporation of municipalities, and to the annexation of additional territory to such municipalities.

Without reading the petition in full it may be observed that it is claimed that there is error in the proceedings for the annexation of said territory in various respects, including the proceedings before the city council of Ashtabula, and also errors in the proceedings of the commissioners of Ashtabula county in various respects; and the further claim is made that it is not right, just nor equitable that said annexation be made for many reasons, among others that the limits of said city of Ashtabula are already unreasonably large, and contain more territory than it

can now keep in order, and has many miles of common dirt highways which are wholly unimproved, many of them being wholly impassable for teams and in a bad and unsafe condition. The claim is also made that the population of said city is rapidly diminishing in numbers, and that for this reason there is no demand for additional property or buildings in said city. And it is further claimed that the annexation of said territory is not desired by the inhabitants of said city generally, nor by the resident and non-resident freeholders of land lying within the territory sought to be annexed; but that the same is desired and prosecuted solely as a real estate speculation by one H. D. Cook, who is now mayor of Ashtabula, and one C. E. Zeile. That said Cook and Zeile in the years 1906 and 1907 purchased a large tract of land in said territory, and have since been trying to get the same annexed to the city in furtherance of their speculative projects, and against the wishes of almost all the inhabitants and owners of property in said territory.

The petition then gives the history of former attempts which are alleged to have been made by the said Cook to procure the annexation of said territory on petition by resident landowners, and the failure of said proceedings. It is further alleged that the said Cook then presented to the city council of Ashtabula a petition purporting to be signed by resident freeholders of said territory sought to be annexed, and that the said council acting solely by their request and influence of said H. D. Cook, immediately suspended the rules and passed said ordinance without argument, and without any consideration of its merits; without giving other persons any opportunity to be heard, and the petitioners attach a copy of said petition and ordinance to the petition in this case.

It is further claimed that when the petition prepared by the solicitor in accordance with such ordinance was presented to the county commissioners, that the said commissioners did not give said matter any consideration; but said commissioners had promised and agreed with said Cook that if he could and would get an ordinance passed by the city council of Ashtabula, to annex said territory, they, the said board of county commissioners, would ratify the same, and authorize said annexation without delay, and that said commissioners committed error

therein, because they assumed that said city council was of equal or superior authority with themselves, and by reason thereof and of said agreement with said Cook they refused to reverse or review said action of said city council.

The city of Ashtabula, on its own motion, has been made a party defendant, and though no answer has been filed, it has appeared by counsel, and has been permitted to offer evidence as though a general denial had been filed to the petition.

This proceeding is a statutory one. There seems to be a little uncertainty as to the law governing this case, for the reason that there are cross-references from one statute to another, requiring that proceedings shall be had in all respects, "so far as applicable."

Section 1599 (1536-41), Revised Statutes, provides—

"When the inhabitants generally of any municipal corporation desire to enlarge its corporate limits by the annexation of contiguous territory, it shall be done in the manner hereinafter specified."

Section 1600 (1536-42), Revised Statutes, provides that—

"The council  *  *  *  by a vote of not less than a majority of the members elected, shall pass an ordinance authorizing such annexation to be made, and directing the solicitor of the corporation, or some one else to be named in the ordinance, to prosecute the proceedings necessary to effect such annexation."

Section 1601 (1536-43), Revised Statutes, provides for the filing of a petition by the corporation, with the county commissioners, to be accompanied by an accurate description of the territory and an accurate map thereof.

Section 1602 (1536-44), Revised Statutes, provides:

"When such petition is presented to the commissioners, like proceedings shall be had, in all respects, so far as applicable, as are required under the provisions of subdivision one of this chapter."

Subdivision one contains the sections providing for annexation of territory on application of its citizens, and by Section 1590 (1536-32), Revised Statutes, it is provided that—

"Such petition shall be presented to the board of commissioners, and when so presented the same proceedings shall be

had, in all respects, as far as applicable, and the same duties in respect thereto shall be performed by the commissioners and other officers, as are required in the case of an application to be organized into a village under the provisions of this division; and the final transcript of the commissioners, and the accompanying map or plat and petition, shall be deposited with the clerk of the city or village to which such annexation is proposed to be made, who shall file the same in his office.''

Section 1591 (1536-33), Revised Statutes, provides:

''At the next regular session of the council of such city or village, after the expiration of sixty days from the date of such filing, the clerk shall lay the transcript and the accompanying map or plat and petition before the council; and thereupon the council shall, by resolution or ordinance, accept or reject the application for annexation.''

Section 1594 (1536-36), Revised Statutes, provides:

''If the clerk, within sixty days from the filing of such transcript * * * receive notice from any person interested that he has presented to the court of common pleas, or a judge thereof, a petition to enjoin further proceedings, the clerk shall not report to the council such transcript, map or plat and petition filed with him, until after the final hearing and disposition of the petition so presented to such court or judge.''

From these provisions of the statute, it would appear that the transcript of the commissioners should be deposited with the clerk of the city, rather than the recorder of the county, as was done in the proceedings under consideration in this case.

The claim is made that the provision regarding the filing of papers with the clerk of the city is not applicable in a case where the corporation itself files a petition, and it is claimed that the cross-reference from Section 1590 (1536-32), Revised Statutes, to the other provisions providing for the application to be organized into a village should be applied to an application of this kind.

Section 1557 (1536-10), Revised Statutes, of the chapter providing for incorporation of villages and hamlets, provides:

''The hearing shall be public, and may be adjourned from time to time, and from place to place, according to the discretion of the commissioners, and any person interested may appear, in

person or by attorney, and contest the granting of the prayer of ·the petition, and any affidavits presented in support of or against the prayer of the petition shall be considered by the commissioners, and the petition may be amended by their leave."

Section 1558 (1536-11), Revised Statutes, provides:

"If the commissioners, upon such hearing, find that the petition contains all the matters required, that its statements are true, that the name proposed is appropriate, that the limits of the proposed corporation are accurately described, and are not unreasonably large or small, that the map or plat is accurate, that the persons whose names are subscribed to the petition are electors residing on the territory, that notice has been given as required, that there is the requisite population for the proposed corporation, and if, moreover, it seems to the commissioners right that the prayer of the petition be granted, they shall cause an order to be entered on their journal to the effect that the corporation may be organized."

Section 1559 (1536-12), Revised Statutes, provides:

· "The commissioners shall cause to be entered on their journal all their orders and proceedings in relation to such incorporation, and they shall cause a certified transcript thereof, signed by a majority of them, to be delivered, together with the petition, map, and all other papers on file, relating to the matter, to the recorder of the county, at the earliest time practicable."

Section 1560 (1536-13), Revised Statutes, provides:

"The recorder shall file the transcript and other papers in his office, and at the expiration of sixty days thereafter, unless enjoined as hereinafter provided, he shall make a record of the petition, transcript, and map in the proper book of records, and preserve in his office the original papers delivered to him by the commissioners, certifying thereon that the transcript, petition, and map are properly recorded."

Section 1562 (1536-18), Revised Statutes, provides:

"Any person interested may, within sixty days from the filing of the papers with the recorder, as above provided, make application by petition to the court of common pleas, or, if during vacation, to a judge thereof, setting forth the errors complained of, or the inaccuracy of the boundaries, or that the limits of the proposed corporation are unreasonably large or small, or that it is not right, just, or equitable that the prayer of the petition

presented to the board of commissioners be granted, or containing any or all of such averments, and praying an injunction restraining the recorder from making the record and certifying the transcript, as above required.''

Section 1564 (1536-20), Revised Statutes, provides, among other things, that upon the hearing of said petition—

''The court or judge may hear evidence upon the matters and things averred in the petition; and if, upon such hearing, no error is found in the proceedings before the commissioners, and no inaccuracy in the boundaries, and if the court shall further find that the limits of the proposed corporation are not unreasonably large or small, and that it is right, just and equitable that the prayer of the petition presented to the commissioners be granted, the petition for such injunction shall be dismissed; * * * but if error is found in the proceedings, or if the boundaries are found to be so inaccurately described as to render indefinite or uncertain limits or extent of the proposed corporation, or if the court shall find that the limits of the proposed corporation are unreasonably large or small, or that it is not right, just or equitable that the prayer of the petition presented to the commissioners be granted, then the court or judge shall make an order enjoining the recorder from making the record; provided that such order shall not be a bar to any subsequent application to the commissioners for the purpose of effecting such incorporation.''

Neither the plaintiffs nor the city of Ashtabula, which was made a party defendant on its motion, has urged the fact that these papers were filed with the recorder rather than with the clerk of the city of Ashtabula, as a ground to be considered by this court in determining this case; but have each insisted that the matter should be heard fully upon its merits.

However, it seems that it is necessary that this question should be determined, and a careful consideration of the statutes above referred to leads to the conclusion that the papers should have been filed with the clerk of the city and not with the county recorder. It is suggested that the fact that the corporation filed the petition, after the city council had by ordinance declared in favor of the annexation, would make it unnecessary to have the papers returned to the clerk of the corporation to be laid before the council. It is clear, however, that the action of the council in passing the original ordinance only started the ma-

chinery in motion, and it is certainly right and proper that the final result of the application should be certified to the clerk of the city, to be by him laid before the council, and made a part of the records of the city that all concerned might be advised as to the enlarged limits of said corporation. Of course there would be nothing illogical in filing these papers with the recorder of the county, and yet the provisions for filing with the recorder are coupled with the procedure to be taken when a village is to be incorporated and named, and this provision for so filing with the recorder is not necessarily applicable in a case for the annexation of territory merely, and inasmuch as the procedure for the annexation of territory on the petition of inhabitants of such territory provides for the filing of the transcript and other papers with the clerk of the city, and this section is referred to as governing, "so far as applicable," in cases where the corporation itself files the petition, the court has reached the conclusion, as above suggested, that these papers should have been filed with the clerk of the city rather than with the county recorder. Nor is the court without precedent for so finding, for in the case of *Pollock* v. *Toland,* 1 C. C.—N. S., 315, the circuit court of the eighth circuit, Judge Laubie of this circuit sitting as one of the trial justices, approved and confirmed proceedings in which the city of Cleveland had filed a petition for annexation of territory, in which proceedings the transcript and other papers from the commissioners were filed with the clerk of the city of Cleveland. So far as appears, from the report of that case, no question was raised as to the propriety of that procedure, but it seems to have been taken for granted by both court and council.

In view of the conclusion which the court has reached upon this proposition, it would seem that the plaintiff is entitled to an injunction restraining the recorder from taking further proceedings which would tend to confuse and mislead the board of county commissioners, as well as the general public; and for this reason the consideration of the further questions raised by the petition in this case would scarcely seem necessary.

In view of the manner in which this case has been tried, however, and because the court may be in error as to this ques-

tion of the proper depositary for said papers, it may be well to consider the other questions which have been presented by counsel.

It is claimed that the injunction should be allowed for many reasons, the chief ones which have been discussed being—

First. That the mayor of the city of Ashtabula has a large financial and property interest in having the proposed annexation made, and had such interest at the time that he, as mayor, approved the ordinance providing for such annexation.

Second. That the commissioners erred, or were guilty of misconduct in performing the duties devolving upon them, in this, to-wit, that they based their finding almost solely upon the finding of the city council and that prior to the hearing they had practically assured the mayor of said city that they would take favorable action if the city council should pass an ordinance in favor of annexation.

Third. That it is not just or equitable that the proposed annexation should be made, for many reasons, among others that the proposed territory is too large, much of it being simply unoccupied farm land, that the city of Ashtabula already has a large amount of unimproved territory, that it has many miles of unimproved highways, variously estimated from seventy to one hundred and twenty-five miles of which only about seven miles have been improved by paving and only about twenty-two miles improved by sewers, and that the burden of maintaining additional streets with the duty of lighting and caring for the same, as required by law, would be placing an unreasonable burden upon the tax-payers of said city in view of the present high rate of taxes.

As to the first question suggested, that of the financial interests of the mayor, in the proposed annexation, it may be observed that the issue raised is very similar, though not identical, to the question passed upon by the court of common pleas and the circuit court of Cuyahoga county, in cases involving the validity of ordinances granting certain franchises for the construction of street railways in the city of Cleveland.

The legal questions raised in those cases were passed upon by Judge Phillips in a very exhaustive opinion in *Cleveland Elec.*

*Ry.* v. *Cleveland,* unreported, and the doctrine which he enunciated was affirmed by the circuit court. In that opinion Judge Phillips says:

"In the whole realm of jurisprudence no principle is better established or rests on firmer foundation, than the one which forbids one occupying a fiduciary relation from placing himself in any degree in antagonism to his trust. Agents, guardians, executors, directors of corporations, officers of municipalities, and all other persons clothed with fiduciary character are subject to this rule. And this rule is accentuated in its application to the officers and agents of municipal corporations. The reason and propriety for accentuating this rule in its application to public officers are at once plain and strong. A public officer is one to whom is delegated some of the sovereign functions of government, to be exercised by him for the public benefit. He acts only for the public; and the public are represented in the instance only by him; and the theory upon which his acts bind the public is that his acts have the public sanction, because they are exclusively in the interest of the public."

In support of his conclusion Judge Phillips cites many authorities, among others Dillon, Mun. Corp., Section 444, as follows:

"It is a well established and salutary rule in equity that he who is entrusted with the business of others can not be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based upon principles of reason, of morality and of public policy; it has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man can not serve two masters, and is recognized and enforced wherever a well regulated system of jurisprudence prevails.   *   *   *
"The law will in no case permit persons who have undertaken a character or a charge to change or invert that character, by leaving it and acting for themselves in a business to which their character binds them to act for others. The application of the rule may, in some instances, appear to bear hard upon individuals who had committed no moral wrong; but it is essential to the keeping of all parties filling a fiduciary character to their duty, to preserve the rule in its integrity and to apply it to every case which justly falls within its principle. The principle generally applicable to all officers and directors of a corporation is that they can not enter into contracts with such corporation to do any work for it, nor can they subsequently derive any bene-

fit from such contracts. To deny the application of the rule to municipal bodies would, in the opinion of the Canadian Chancery Court, be to deprive it of much of its value, for the well working of the municipal system, through which a large portion of the affairs of the country are administered, must depend very much upon the freedom from abuse with which they are conducted.''

Numerous cases might be cited to sustain this doctrine, which so far as this court has been advised, has never been questioned by any high authority. Without citing in detail I will simply refer to the following: *People* v. *Overyssel Tp.*, 11 Mich., 222, 226; *Grand Island Gas Co.* v. *West*, 28 Neb., 852, 855; *Smith* v. *Albany*, 61 N. Y., 444, 447..

In the case at bar the plaintiffs offered evidence, which they claim would have shown more fully the connection of the mayor with the action taken by the city council, and the arbitrary manner in which the council so acted. "This offer was objected to by defendants and the court at that time sustained the objection, and was possibly not warranted in so holding. During the progress of the trial, however, by examination of the mayor himself, as well as from the examination of other witnesses offered by the defendant, it appears, without contradiction, that the mayor is the owner of considerable land in said territory, for which he has paid many thousands of dollars, that he assumed to act as agent for the owners of real estate in the territory sought to be annexed, his own statement being that he supposed he appointed himself as agent, that after the two successive petitions of property owners had been dismissed by the commissioners, he appeared quite incensed and to use his own language "he declared to members of the board that he had been skinned and robbed" and had expended the sum of $60, by reason of the said commissioners having assumed jurisdiction by reason of which considerable sums had been spent for giving notice of said application. That thereupon one or more of the commissioners assured him that if he would have the city council of Ashtabula pass an ordinance for the annexation, the board of commissioners would not oppose it, and would act promptly in the matter, or words to that effect. That thereupon the mayor employed a man to circulate a petition among the

owners of land in that territory, and that he showed his interest in the matter to the extent that he deeded some land to an employe or care-taker, without any consideration paid except the sum of one dollar, and upon the day that the deed was executed, procured the said employe to sign the petition as an owner of land in said territory. As to whether or not the mayor took any definite steps to influence the action of the council, was not shown by plaintiffs in view of the holding of the court against their offer, and the mayor himself declared that he had taken no action whatever to influence their conduct.

Under the statute (Section 125, Mun. Code of 1902), however, the mayor must approve the ordinance in order to make it effective. He has a right to veto any ordinance, in which case it would require two-thirds of the council to pass it over his veto. As a public officer his duty was to act in the premises with entire impartiality and with an eye single to the interests of the municipality which he represented. After a careful consideration of this question the court has arrived at the conclusion that the ordinance, passed as it was and approved by the mayor in the light of his strong financial interest, was invalid for the purpose of authorizing the solicitor to take further proceedings, and therefore there was no proper petition to be considered by the county commissioners.

It is claimed by counsel for defendants that this view of the case would prevent the improvement of any street on which the mayor might own any piece of property. Without assuming to pass upon any hypothetical case, it may simply be observed that a court of equity might disregard some unimportant interest which a mayor might own in real estate to be effected by an ordinary street improvement where the scheme of the improvement provides that almost all the costs shall be assessed upon the abutting property, but be that as it may, it is apparent, even from the evidence adduced by the defendant itself, that this entire plan for annexation was largely devised by the mayor, and would not have been urged upon the commissioners or the council had it not been for his active interest in the matter, and an ordinance so passed is clearly invalid as against public policy.

In speaking of the ordinance passed by the city of Cleveland Judge Phillips makes this statement which it seems to me is entirely applicable, in principle, to the case at bar.

"I suppose that strictly speaking such grant by the city officials would be *intra vires*. Its invalidity would not come from want of corporate capacity; it would come from the vires of corruption and fraud from dereliction of official duty, from bad faith in a trust relation, from antagonism of personal interest and fidelity to the public interest. Such transaction would contravene public policy, which Mr. Greenleaf says is a principle of the law which "secures the people against the corruption of justice or the public service, and places itself as a barrier before all devices to disregard public convenience."

Concerning the second question suggested, as to the misconduct or misinterpretation of their duty by the board of county commissioners, it may be said that while the board undoubtedly acted in good faith, and although the court finds that there was no intention to do anything that was wrong or dishonest, it is clear that they misapprehended the judicial character of the duty which they had to perform. While the evidence will scarcely warrant the conclusion that there was any definite promise or agreement between them and Mayor Cook, as charged in the petition, the fair import of the testimony of these commissioners themselves, together with the testimony of the witnesses, adduced by the plaintiff upon this issue, is that they suggested to the mayor, that if the city council would first act, they would not further oppose the project of annexation. And the fair import of the testimony of the commissioners is, that when the petition of the city of Ashtabula came before them, they felt there was nothing else they could do but to grant it, and that at least one or more of the commissioners sets aside his own individual judgment in the premises in favor of the action taken by the city council.

But is this such error as may be taken advantage of in the manner attempted to be done by the petition in this case? This error, if it may be called an error, is not shown by the record of any proceedings which were had before the county commissioners, but has been disclosed by extrinsic evidence admitted

by the court, over the objection of the defendant city, to sustain the allegations of the petition.

The statutes make no definite provision by which a bill of exceptions may be taken in proceedings before the board of county commissioners, and so far as the statutory provisions are concerned, it seems that the court is left only to examine the transcript of journal entries, etc., as certified by the board of commissioners.

If we are to consider, however, that the court of common pleas upon this petition is to consider the justice and equity of this annexation, can the court consider the issue made as to the conduct of the commissioners as bearing upon this question of justice and equity? It must be noted that this court is not the original tribunal to pass upon the question of annexation. The board of county commissioners must pass upon the issues of fact raised as to whether or not such annexation should be allowed, and they are bound to consider, not only the needs of the city but also the rights of the owners of property in the territory sought to be annexed. Their duty is of a judicial character and requires that they should consider it from the view point of all the parties interested, and all these parties have an absolute right under the statute to have the deliberate judgment of this tribunal before it is taken to any other tribunal. If this tribunal, the board of county commissioners, refuse to grant such annexation, this court has no power to review their holding and to grant an annexation. It is only when they have acted favorably that any person interested has a right to appeal to the court of common pleas. And while this court may set aside their affirmative action, or may approve what they have done, it has no original power to pass upon the question on its merits.

Therefore it is clear that all parties interested have a right to the proper consideration of the question on its merits, by this first tribunal, and while it is doubtful whether the question as to the misapprehension of their duty by the board of commissioners can be considered technically as an error in the proceedings, this court has reached the conclusion that justice and equity require that the question should be first fully and fairly considered by that tribunal, and because the testimony shows

that they failed to give it such fair consideration, the prayer of the petition ought to be granted.

Holding the views thus expressed as to the duty of the court to grant the prayer of the petition, it would seem unnecessary for the court to determine in detail on the merits, whether or not the annexation of the proposed territory ought to be made, considering the interests both of the city and of the owners of land in such territory.

Under the statutes, the determination of this case is no bar to new proceedings to be taken. And as this matter may later come up for consideration, on other proceedings, it scarcely seems necessary or advisable for this court to make a finding which might be insisted on as a precedent hereafter.

The trial judge, upon the evidence presented, has formed an opinion upon the merits of the case, but such an opinion would seem to be immaterial, unless the counsel for defendant insist upon their request for a separate finding of fact and of law, in which event this court is of the opinion that they would be entitled to such finding.

The question as to whether this separate finding shall be insisted upon is therefore left to counsel for defendant, and if insisted upon, the trial judge will prepare and file a separate finding of law and of fact.

The entry in the case will be, "Trial to court, perpetual injunction allowed as prayed for, and costs assessed against the defendant, the city of Ashtabula," inasmuch as the recorder has no more than a nominal interest in the issues involved.