Submitted on motions to strike transcript and brief. Motion to
strike transcript denied and motion to strike brief allowed
conditionally May 28, submitted on briefs July 30, modified
September 24, 1929.

## GEORGE M. STROWBRIDGE ET AL. v. THE CITY OF CHILOQUIN ET AL.

(277 Pac. 722; 280 Pac. 657.)

446

For plaintiffs, *Mr. M. O. Wilkins.*

For defendants, *Messrs. Manning, McColloch & Driscoll.*

COSHOW, C. J.—■ Plaintiffs confess the incompleteness of their transcript and tender with their opposition to the motion to strike a completed transcript. They also present sufficient justification for not having filed a complete transcript sooner. The case is one in equity and, therefore, the court could not try the case anew without all the evidence, and, of course, would have refused to do so on the record as it stood when the motion to strike was made. But the situation now is different and we do not think plaintiffs should be penalized for their inability to procure a complete transcript: *Walker* v. *Fireman's Fund Ins. Co.,* 122 Or. 179 (257 Pac. 701).

The brief filed by plaintiffs is subject to severe criticism. In page 16 of plaintiffs' brief we find the following:

"Plaintiffs' Recusation and Challenge against A. L. Leavitt, the trial judge, if sustained deprives the Decree of all Consideration in this Court. Three sets of affidavits and motions were brought in to circumvent the Trick or Sharp Practice of the defendants. An unverified answer and a willing judge who was then a candidate for reelection made the combination, and it was easy to secure a violation of the principle laid down by Judge BEAN in *Packwood* v. *State,* 24 Or. 262 (33 Pac. 674)."

In page 17:

"The court can see from the stipulation of the defendants (pages 3, 4 and 5 Evidence) that there was no issue on the facts—it was all a question of law and the construction of the Charter—yet the *'prejudiced' court* denies plaintiffs costs, and defendants force them to produce the proof of charter and ordinances of the city under a general denial."

In page 20 of the brief is the following language:

" * * when the Decree was written, the Court either carelessly or of premeditated prejudice, fixed the amount of the final levy at $24,914.64—and we now challenge the defendant to harmonize the amount with the *pleadings, vouchers* or *anything else.*"

Plaintiffs close their brief as follows:

"The Demonstrable Mistake in Figures, and including the many Vouchers for Extras—make the alleged Decree a Travesty."

Our statute prescribes the duties of attorneys to be, among other things, as follows:

"2. To maintain the respect due to the courts of justice and judicial officers; * *

"6. To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the

justice of the cause with which he is charged."
Or. L., § 1082.

■ ■ The brief is a very flagrant abuse of the duties of attorneys who are public officers as defined in our Code cited above. From a reading of the brief it seems that the attorney for plaintiffs is aggrieved because his motion to disqualify Judge LEAVITT was denied by him. That motion was not presented, however, until after a motion and a demurrer had been presented and argued, and the case put at issue on the facts more than one day prior to the attempt to disqualify Judge LEAVITT. Plaintiffs were not entitled to disqualify the judge under the circumstances: Gen. Laws 1925, Chap. 143. But even if the motion had been well taken plaintiffs would not be justified in filing in this court a slanderous brief reflecting upon the integrity and motives of the judge who sat in the case. Abuse is no argument; culmination is not convincing; defamation is not determinative of an issue; perversion of speech is not persuasive. The language quoted from plaintiffs is very far from being respectful to the Circuit Court.

Defendants' counsel suggest that unless the brief is stricken they should have the privilege of responding in the same kind. "Two wrongs never make a right." Defendants should not follow the base example set by plaintiffs. We think the attorney for plaintiffs should file an apology in this court apologizing to Judge A. L. LEAVITT and this court for using the disrespectful language quoted above from their brief. If he does not do so within twenty days from the date of this opinion, the brief will be stricken from the files of this court. The motion to strike the transcript from the files is denied. The motion to strike the brief is allowed unless plaintiffs comply with this

opinion by filing in this court a proper apology within twenty days.

MOTION TO STRIKE TRANSCRIPT DENIED. MOTION TO STRIKE BRIEF ALLOWED.

BROWN, J., did not participate in this opinion.

ON THE MERITS.

For appellants there was a brief over the name of *Mr. M. O. Wilkins.*

For respondents there was a brief over the names of *Messrs. Manning, McColloch & Driscoll, Mr. Ralph W. Horan* and *Mr. Ralph M. Farmer.*

BELT, J.—■ This suit challenges the validity of certain special assessments levied against the property of plaintiffs to pay for a sewer improvement in the City of Chiloquin, Klamath County. The much needed sewer has been constructed and various property owners have long been enjoying the benefits thereof. Plaintiffs made no timely objection or remonstrance and, since the city unquestionably obtained jurisdiction, we are not concerned with numerous alleged irregularities in the special assessment proceedings: *Wingate* v. *City of Astoria,* 39 Or. 603 (65 Pac. 982).

■ Many questions "thrown at us" for decision are not supported by argument or citation of authorities. They are deemed to have been waived.

■ ■ Attack is centered on an item of $4,175 "for engineering, inspection and supervision"—$1,100 of which sum was paid to Councilman Jack Almeter for services as inspector. It is argued that no charter or ordinance of the defendant city authorized engineer's fees to be paid through special assessments. There is no merit in this contention. The charter

plainly contemplates that the council may, in its discretion, employ an engineer to oversee and superintend such construction work. Section 93 of the charter provides:

" * * the city may have the work performed by day labor under the supervision of the city engineer or an engineer employed by the city for said purpose."

There are numerous other references in the charter plainly indicating an intention that engineering fees are to be paid by assessment on property benefited by the improvement. It is true that the fees of the engineer are very high in view of the amount paid the contractor ($17,523.41) for the completion of the work, but they are not so excessive as to amount to a badge of fraud. The council has wide discretion in such matters. Engineering fees were included in the estimate and approved by resolution. Ordinance 44 adopted the plans, specifications and estimates in such resolution and ordained that the improvement be made in accordance therewith.

■ We think, however, that it was contrary to public policy to pay Councilman Almeter $1,100 for his services as inspector. He was employed by the city engineer "with authority of the council." Section 34 of the charter provides:

"No member of the council shall, during the period for which he is elected or serving as such, be interested in any contract the expenses of which are to be paid by the city or in any contract wherein the city is interested."

Certainly Almeter was "interested," within the meaning of the charter, in the contract which the city had for the construction of the sewer. He was the agent of the city and it does not promote the public

welfare to permit him to become employer and employee: *Smith* v. *City of Albany,* 61 N. Y. 444.

It is idle to argue that Almeter was not pecuniarily "interested" in a "contract wherein the city is interested" when he was being compensated as inspector at the rate of $8 per day. It is beside the question that his services may have been well worth what the city paid him. The vital point is that his employment contravenes well-established interests of society. As said in *Waymire et al.* v. *Powell et al.,* 105 Ind. 328 (4 N. E. 886):

"Where public officers are authorized by law to employ others to perform services for the municipality of which they are officers, public policy forbids that they should employ one of their own number."

We see no other item objected to by appellants which merits attention.

The trial court erred in fixing the total amount of assessment. The decree used as a basis the original proposed assessment of $25,818.68 and deducted items aggregating $904.04 as invalid, whereas the total assessment, as amended, was $24,511.37. Deducting from $24,511.37 the items stricken by the trial court amounting to $904.04, from which no appeal has been taken, and the item of $1,100 invalidated by this court, the sum of $22,507.33 is found to be the correct amount of the assessment.

The decree of the lower court is modified in accordance with this opinion. Since plaintiffs were obliged to appeal from a decree erroneous in the particulars above mentioned, it is deemed equitable to award costs and disbursements to them in this court.

MODIFIED.