## Medical Services at State Teachers College

ARNOLD, Deputy Attorney General, July 16, 1934.—You inform us that the trustees of a State teachers college employed one of their own members, who is a physician, to make certain physical examinations of students and to render medical and surgical attention to students who were injured in school athletics. The doctor-trustee presented a bill for $787 for services performed during a year. As we understand it, the bill consisted of itemized charges of from $1 to $3 for each treatment or examination.

You inquire as to the propriety of paying this bill, in view of the fact that the doctor is a member of the board which employed him.

We find no express statutory provision which would make it improper to pay this bill. Section 66 of the Criminal Code of March 31, 1860, P. L. 382, is not

applicable because it applies only to the furnishing of materials and supplies by members of public boards and institutions.

However, in our opinion the contract under which this bill is presented is invalid under well-established principles of the common law, and no statutory prohibition is needed to condemn it.

In 6 R. C. L. 740, it is said:

". . . The rule prohibiting public officers from being interested in public contracts is embodied in the statutes of some states. The rule is, however, not dependent on statute. According to the weight of authority, a contract by a board or public body with a member thereof or in which a member thereof is interested is unenforceable even in the absence of a statutory prohibition, although from some of the decisions it is not clear whether such contracts are to be regarded as void or voidable. The reason is that in such case the member's public duty and his private interests are directly antagonistic. It matters not if he did in fact make his private interests subservient to his public duties. It is the relation that the law condemns, not the results. It might be that in a particular case public duty triumphed in the struggle with private interests; but such might not be the case again or with another officer, and the law will not increase the temptation or multiply opportunities for malfeasance. Neither will it take the trouble to determine whether in any case the result show a wrong or crime, but it absolutely and unequivocally refuses its sanction to any contract of any kind whatever where such relation exists. . . ."

In 19 R. C. L. 898, the principle is repeated in the following form:

". . . Even in the absence of statute a contract entered into between a municipal corporation through its council and one of the members of the council is not enforceable. . . ."

A similar statement appears in 22 R. C. L. 460.

Cases in Pennsylvania and in other jurisdictions provide ample foundation for the rules above quoted.

In Commonwealth v. Douglass et al., 1 Binn. 77 (1803), a mayor and four magistrates of Philadelphia met to appoint a prison inspector and appointed one of the four magistrates to that position. The Supreme Court sustained an attack on the propriety of the appointment, saying (p. 84):

". . . One having a discretionary authority to appoint a fit person to a public office appointing himself, seems a solecism in terms; and it cannot be deemed the fulfilment of his duty. . . ."

In Commonwealth v. Bowman, 44 Pa. C. C. 127 (1916), the Court of Common Pleas of Clearfield County sustained a quo warranto proceeding against a mercantile appraiser. The appraiser had been appointed by the county commissioners while he was one of the commissioners. The court said ( p. 129):

"Several questions are involved in this proceeding. It is alleged on behalf of the relator, and also as the moral ground for the action taken by the present board, that the appointment of H. L. Bowman was illegal because he was a member of the board making the appointment. 'It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of a statutory inhibition all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint.' Cyc., Vol. XXIX, page 1381. In Com. v. Douglass et al., 1 Binney 77, decided in 1803, the Supreme Court said: 'One having a discretionary authority to appoint a fit person to a public office appointing himself seems a solecism in terms; and it cannot be deemed the fulfillment of his duty.' "

In Wilson v. Montrose Borough, 12 Dist. R. 754 (1903), the Court of Common Pleas of Susquehanna County did permit a member of the board of health of the borough to collect a fee for services rendered in fumigating the house of a person who had died of smallpox. However, the decision was based squarely on the fact that there was an immediate emergency and that the jury had determined that it was impossible to obtain any other competent person to do the work. The court said that the employment by the board of health of one of its own members to perform this work was indeed contrary to public policy and it could be excused only under the peculiar circumstances of the case, in which a necessity for the protection of the public health and a pressing emergency were present.

In City of Fort Wayne v. Rosenthal, 75 Ind. 156, 39 Am. Rep. 127 (1881), the court refused to allow a member of the board of health to collect fees for vaccinating school children, in spite of the fact that there seemed to be a pressing need for the vaccination in the presence of an outbreak of smallpox.

In Smith v. City of Albany, 61 N. Y. 444 (1875), the court refused to permit a member of city council to collect for the hire of horses and carriages which he furnished to a committee of the council for a celebration which had been authorized by council. The refusal was based squarely on the ground that such a contract was contrary to public policy and invalid under common law, without respect to any statute.

In Young et al. v. City of Mankato, 97 Minn. 4, 105 N. W. 969, 3 L. R. A. N. S. 849 (1905), the Supreme Court of Minnesota refused to permit a member of an official board to collect fees for legal services rendered to the board, in spite of the fact that it was admitted that he had done good work and that the amount of his bill was entirely reasonable. The court said (3 L. R. A. N. S. 850):

"The question thus presented is not whether the board having the appointive power also had the power to fix the compensation of the person engaged to further its legal purpose, but whether such board is prohibited by law from employing, at the cost of the public, one or more of its own members. The validity of such a contract as is here involved is not to be determined by the fact that, as a result, the public received a benefit or suffered an injury, but by general principles of public policy governing it, and by a construction of the terms of the law creating such board and regulating its employment of assistants. 'It is among the rudiments of the law that the same person cannot act for himself and at the same time with respect to the same matter as the agent of another whose interests are conflicting. . . . The two positions impose different obligations, and their union would at once raise a conflict between interest and duty; and, "constituted as humanity is, in the majority of cases duty would be overborne in the struggle." Marsh v. Whitmore, 21 Wall. 178, 22 L. ed. 482.' Mr. Justice Field, in Wardell v. Union P. R. Co., 103 U. S. 651, 658, 26 L. ed. 509, 511. . . ."

Other cases to the same effect are collected in a note appended to the last mentioned case in 3 L. R. A. N. S. 849, and in a note in 15 L. R. A. 520.

Therefore, we advise you that the employment by the trustees of a State teachers college of one of their own number to render medical services to students at the college to be paid for from public funds is invalid as contrary to public policy and the common law.     From C. P. Addams, Harrisburg, Pa.