## SCHULTZE v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

1. CORONERS (§ 4*)—CITY OFFICERS—CORONER'S PHYSICIAN.

> As a borough coroner in the city of New York is a city officer, and subject to the general charter provisions of its charter in relation to city officers, so is a coroner's physician, whose appointment by a coroner is provided for by Consolidation Act (Laws 1882, c. 410) § 1769, and whose duties are prescribed by section 1773, both continued in force by Greater New York Charter (Laws 1901, c. 466) § 1571.
>
> [Ed. Note.—For other cases, see Coroners, Cent. Dig. § 3; Dec. Dig. § 4.*]

2. CORONERS (§ 7*)—CORONER'S PHYSICIAN—SERVICES OUTSIDE OF DUTIES—COMPENSATION.

> A coroner's physician in New York City, being a city officer, if performing services ·outside his duties, at the request of the district attorney, cannot recover extra compensation therefor of the city; Greater New York Charter (Laws 1901, c. 466) § 1533, prohibiting any officer of the corporation from being interested in or in the performance of, any contract, work, or business, the expense, price or consideration of which is payable from the city treasury.
>
> [Ed. Note.—For other cases, see Coroners, Cent. Dig. §§ 7–10; Dec. Dig. § 7.*]
>
> Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by Otto H. Schultze against the City of New York. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Terence Farley, of New York City, for appellant.
Almuth C. Vandiver, of New York City, for respondent.

INGRAHAM, P. J. [1] The coroners in the city of New York are classed under section 1570 of the charter (chapter 466 of the Laws of 1901) as borough officers. In the case of People ex rel. Burger v. Blair, 21 App. Div. 213, 47 N. Y. Supp. 495, affirmed on opinion below 154 N. Y. 734, 49 N. E. 1102, the status of coroners was determined, and it was held that by the enactment of the charter the office of county coroner was abolished and borough officers elected under its provisions were vested with the powers and jurisdiction theretofore exercised by the county coroners; that the borough coroners are city officers. And in People ex rel. Hillman v. Scholer, 94 App. Div. 282, 87 N. Y. Supp. 1122, affirmed 179 N. Y. 602, 72 N. E. 1148, we held, following Burger v. Blair, supra, that the borough coroners were city officers, and their salaries and the expenses of their offices were chargeable on the entire city alike. It was also held that section 1543 of the charter did not apply to a clerk appointed by a coroner, as that section by its express terms applies only to "the heads of all departments and all borough presidents." Section 1769 of the Consolidation Act was continued by the express provisions of section 1571 of the charter, which provides that each of said coroners shall possess all the powers vested in or imposed upon coroners by any existing law relating to coroners in the city of New York as heretofore known and bounded or by any of the laws of this state. By that section each coroner of said city should, on assuming office, appoint a qualified physician who should be a resident in said city, and who should be known as a coroner's physician, and by section 1773 the duties of a coroner's physician are prescribed.

The plaintiff was duly appointed a coroner's physician under this provision or law by one of the coroners of the borough of Manhattan in the city of New York, and received for his services as such coroner's physician the salary prescribed by law. I think the coroner's physician held an office under the provisions of the charter and the Consolidation Act before referred to. He was appointed for a definite term, and received a stated salary for his services. Section 1770 of the Consolidation Act. While acting in this capacity, he was required to make autopsies, and to give evidence in relation thereto at the coroner's inquest. The position held by a coroner's physician is entirely distinct from a mere clerical position to which the coroner is authorized to appoint from time to time as it becomes necessary. He held a definite position with a definite salary attached and was required to perform definite services for the borough in which he was appointed. He was appointed by a borough officer elected in a particular borough, and, as the coroner became a city officer, the physician appointed by him to the position of coroner's physician also, I think, held a position as a city officer whose salary was paid by the

city of New York for the performance of the specific duties in the said city, and the general provisions of the charter in relation to city officers are applicable to a coroner and a coroner's physician.

[2] While the plaintiff held this office as coroner's physician, he was called upon by the district attorney for assistance in three cases in which there had been indictments for murder. The first case was that of one Patrick, who had been indicted for the murder of one Rice, and who had been tried and convicted. There was a motion for a new trial after the conviction, and in preparing to meet that motion the plaintiff rendered assistance to the district attorney, and wrote a brief on the medical affidavits submitted by the defense. The plaintiff had not performed an autopsy in the Patrick Case, and had never seen the body of the deceased. In the Binge Case, which was also where there had been an indictment for murder, he performed an autopsy upon the deceased and reported the result to the coroner, and later, at the request of the district attorney, he made a microscopic examination of the organs of the deceased, consulted with an assistant district attorney, and gave evidence before the grand jury. The third case was that of People v. Bauer, where the plaintiff had made an autopsy upon the body of the deceased, gave testimony for the people on the trial of the case, and in rebuttal gave further testimony to disprove a claim by the defendant that it was impossible to inflict the wound from which the deceased died by an instrument which was in the possession of the deceased. In none of these employments so far as appears by the record was there any express agreement by the district attorney or his assistant that the plaintiff should be paid a fee for the services that he rendered. He was apparently called upon as one of the coroner's physicians to aid the district attorney in his prosecution of the case of the people, and rendered those services without any express agreement as to compensation. After the services were rendered, he presented a bill to the district attorney for his services, which apparently was approved by the district attorney, and submitted to the comptroller, but which the comptroller refused to pay, whereupon this action was instituted in which the plaintiff has recovered a judgment for the full amount claimed by him as an expert, and the question is presented as to the liability of the city of New York for such services rendered by a coroner's physician to the district attorney.

Section 1533 of the charter expressly provides that no officer of the corporation shall be or become interested, directly or indirectly, as contracting party, partner, stockholder, or otherwise, in or in the performance of any contract, work, or business, or the sale of any article, the expense, price, or consideration of which is payable from the city treasury, and for a violation of this act the officer offending forfeits his office and is punishable as for a misdemeanor, and all such contracts shall at the option of the comptroller be forfeited and void. Section 1550 of the charter prohibits any officer of the city government from receiving to his own use any fees, perquisites, or commissions or any percentage, but every such officer shall be paid by a fixed salary, and all fees, percentages, and commissions received by

any such officer shall be the property of the city. Section 1561 of the charter provides that no officer or employé of the city of New York or of any of the counties comprised within its territorial limits shall detail or cause any officer, employé, or subordinate of the city or any of said counties to do or perform any service or work outside of his public office, work, or employment; and any violation of this section should constitute a misdemeanor. These prohibitions are merely declaratory of the common law. Smith v. City of Albany, 61 N. Y. 444. It is quite necessary to protect the public or a municipal corporation that its officers who are charged with the performance of duties for the public or the municipality should be content for the services they render with the salary prescribed by law, and certainly there is no implied obligation on behalf of a public official to pay a city officer or employé for services that he is called upon to perform for the public in the absence of an express contract that such officer shall receive a compensation in addition to that of his regular salary. The policy of the law is indicated by the sections of the charter to which attention has been called. An express contract of a city official with the municipality is expressly prohibited, and this express provision applies to the head of a department, chief of a bureau, deputy thereof, or clerk therein or other officer of a corporation, and no officer, employé, or subordinate of the city or any of said counties can be required to do or perform any services or work outside of his public work or employment.

The plaintiff by accepting the appointment of coroner's physician became a city officer, and I think his position prohibited him from recovering any compensation for any services that he rendered to the city or to the county of New York while holding such position. It might be that the plaintiff could have refused to perform the services requested as not within the specific duties required of him by the provisions of law which regulated his office, but having at the request of the district attorney assisted him in the prosecution of these cases, in view of the express policy of law as indicated in these provisions of the charter, there certainly could arise no implied obligation which would impose upon the municipal corporation a liability to pay the value of the services. We approve what was said in Mullally v. Mayor, 3 Hun, 661, as a statement of the reasons for the establishment of this rule. The same rule was applied in Beebe v. Supervisors of Sullivan Co., 64 Hun, 377, 19 N. Y. Supp. 629, affirmed on opinion below 142 N. Y. 631, 37 N. E. 566. I consider the enforcement of this rule absolutely necessary for the protection of the public, certainly to the extent that no obligation as against a municipal corporation can be implied because one official consults with another public official as to the performance of his duties or in relation to the public service. The enforcement of this rule requires this court to hold that there is no liability of the city to the plaintiff for the performance of the services which he rendered, and I am therefore in favor of the reversal of this judgment.

It follows, therefore, that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN and SCOTT, JJ., concur.

MILLER, J.  I concur in the result on the ground that under the circumstances disclosed there was no implied contract to pay for the services in question.

DOWLING, J. (dissenting).  Section 1773 of the Consolidation Act, continued in force by section 1571, Greater New York Charter, thus provides, in relation to the duties of a coroner's physician:.

"When in the city of New York any person shall die from criminal violence, or by casualty, or suddenly when in apparent health, or when unattended by a physician, or in prison, or in any suspicious or unusual manner, the coroner shall subpœna one of the coroner's physicians, who shall view the body of such deceased person, externally, or make an autopsy thereon as may be required.  It shall be the duty of the physician to whom such such subpœna is so issued to make the inspection and autopsy required and to give evidence in relation thereto at the coroner's inquest.  The testimony of such physician, and that of any other witnesses that the coroner may find necessary, shall constitute an inquest."

Plaintiff, in proceedings instituted by him to secure a writ of mandamus to compel the civil service board to certify his name as coroner's physician in 1902, swore that:

"The duties of a coroner's physician in the borough of Manhattan required that in the trial of cases of homicidal poisoning he testify to the cause of death and to every step in his examinations and autopsy, and the performance of his said duties in connection therewith, and also that he testify as an expert witness on the part of the people to all questions of a medical, pathological and toxicological nature involved in each particular case."

In my opinion, he correctly set forth his duties therein, and it follows therefrom that, when a coroner's physician has performed an autopsy, he must testify without compensation not only to the facts ascertained by him thereupon, but also as to all matters connected therewith, arising therefrom, or in any way relevant to the cause of death, the condition of the body or of its organs, or the inferences to be drawn therefrom.  As plaintiff originally performed an autopsy in both the Binge and Bauer Cases, I do not believe he can recover for his services as expert therein.

In the Patrick Case, however, he had never performed any autopsy on the body of the person murdered.  His services were solely those of an expert pathologist, rendered at the request of the prosecuting officer of the county, who had the power to call in expert advice and assistance.  The services were rendered in reference to a criminal prosecution upon a motion for a stay of execution pending an application for a new trial, based on certain claims as to the condition of the body of the victim.  I do not believe that section 1533 of the charter of Greater New York, prohibiting any officer of the corporation from being or becoming interested, directly or indirectly, "in, or

in the performance of, any contract, work or business, or the sale of any article, the expense, price or consideration of which is payable from the city treasury," has any application to such a situation as this. That section was intended to prevent city officials from profiting from ordinary city contracts, or from dealing officially with concerns in which they were open or undisclosed partners. The scope of the section is sufficiently indicated by the remedy provided, which is that at the option of the comptroller the contract may be forfeited. Nor do I believe that plaintiff comes within its inhibition, for he is not, in my opinion, an officer of the corporation. "The essential element in a public office is that the duties to be performed shall involve the exercise of some portion of the sovereign power, whether great or small, and it can hardly be contended that a clerk, performing routine duties in strict subordination to a public office and with no authority under the statute to do anything except where directed by such office, is exercising any of the sovereign power." People ex rel. Corkhill v. McAdoo, 98 App. Div. 312, 90 N. Y. Supp. 689. It has been held that coroners themselves are not officers performing a duty imposed upon the municipality (People ex rel. Hillman v. Scholer, 94 App. Div. 286, 87 N. Y. Supp. 1122), and that the clerk of the board of coroners is not a public officer (People ex rel. Hoefle v. Cahill, 188 N. Y. 489, 81 N. E. 453).

The rendition of the services in question is not disputed. As plaintiff has recovered by the verdict of the jury the full amount claimed by him in each case, I am of the opinion that he is entitled to recover the full value of his services in the Patrick Case only, viz., $1,086.95, and that the judgment should be reversed and a new trial ordered, with costs to appellant to abide the event, unless plaintiff stipulates to reduce same to $1,086.95, with costs, in which event it should be affirmed as modified, with costs to the respondent.