### McGUIRE v. PRENDERGAST, City Comptroller.

(Supreme Court, Special Term, New York County. May 20, 1915.)

1. MUNICIPAL CORPORATIONS ⬅162(3)—OFFICERS—SERVICES OUTSIDE OF DUTIES—COMPENSATION—STATUTE.
   Under Greater New York Charter (Laws 1901, c. 466) § 1533, prohibiting any alderman or other officer of the corporation from becoming interested as contracting party or otherwise in the performance of any contract or work, the expense of which is payable from the city treasury, a visiting physician at the city prison, acting under the commissioner of correction and receiving an annual salary and having regular office hours, whose position was not specifically provided by law, and who had not taken the oath of office provided by Public Officer's Law (Consol. Laws, c. 47) § 10, nor the oath specified by section 1548 of the charter, who testified as an expert before commissioners appointed by judges of the Court of General Sessions to examine and report as to the sanity of defendants under indictment, who had pleaded insanity, might recover the fees fixed by such judges against the city, as such payment violated neither the letter nor the spirit of the charter, especially in view of the comptroller's course in making payments for such services.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 360; Dec. Dig. ⬅162(3).]

2. MUNICIPAL CORPORATIONS ⬅891—VISITING PHYSICIAN—FUNDS FOR PAYMENT—EXHAUSTION.
   Code Cr. Proc. § 658, provides that when a defendant pleads insanity the court may appoint a commission to examine him and report as to his sanity, with power to call and examine witnesses; section 662a makes the costs of a commission of lunacy a charge upon the county in which it is executed; Greater New York Charter (Laws 1901, c. 466) § 1542, provides that the heads of departments, etc., charged with incurring obligations out of moneys raised by tax in the city, or the counties within its limits, shall see that such expenditures shall not exceed the amount annually appropriated therefor, and that no charge shall exist for any sum in excess of the appropriation therefor; and section 188, subd. 7, authorizes the comptroller to issue certificate of indebtedness for the payment of claims lawfully payable by the city and the several counties within its limits, for which no other provision has been made; and section 230, subd. 6, requires the board of estimate to annually include appropriations for county, as distinguished from city, expenses. *Held*, that the commissioners had power to call expert witnesses and that the mere fact that an appropriation for disbursements under section 658

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

had been exhausted, or transferred to another fund, was no reason why the fee for such witnesses, as fixed by the court should not be paid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1873; Dec. Dig. ☞891.]

3. MANDAMUS ☞105—PAYMENT OF CLAIM.

In such case, the court, being in possession of all the facts necessary to dispose of the case, and the question being clearly presented might, in its discretion, grant a petition for mandamus against the city comptroller to compel payment of the petitioner's claim.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 223; Dec. Dig. ☞105.]

Mandamus by Frank A. McGuire against William A. Prendergast, Comptroller of the City of New York, to compel the audit and payment of a claim for services. Petition granted.

Order affirmed 157 N. Y. Supp. 1134, which was affirmed by Court of Appeals in 112 N. E. 1064.

Elliot S. Benedict, Asst. Corp. Counsel, of New York City, for respondent.

Moss, Marcus & Wels, of New York City (Isidor Wels, of New York City, of counsel), for relator.

GOFF, J. Dr. Frank A. McGuire, "visiting physician at the city prison and in several of the district prisons," as certified by the commissioner of correction of the city of New York, applies for an order directing that a peremptory writ of mandamus issue out of this court against the comptroller of the city of New York, directing the said comptroller to forthwith audit and pay to the petitioner $1,375. The petitioner's office hours are from 8 a. m. to 11 a. m., and he is subject to call at other times. His duties consist in "the visitation and treatment of both prisoners and employés," and he receives a salary of $1,500 a year. The services for which he seeks to be paid consist of testimony given by him as an expert in 31 cases before commissioners appointed by judges in the Court of General Sessions under section 658 of the Code of Criminal Procedure to examine and report as to the sanity of defendants under indictment who had pleaded insanity. Though he examined and attended to a large number of the prisoners in question in the course of the performance of his duties as "visiting physician," no charge has been included for any examinations made by him, but solely for his testimony as an expert actually given before the commissioners, and after he had been called as such witness by the commissioners.

His fees in each case were fixed by a judge of General Sessions. So far as the amount thereof is concerned, it is not disputed that they are fair and very reasonable charges. Nor is there any question that the services were rendered. It also appears that the hearings took place after 4 o'clock in the afternoon, and that they did not interfere with his regular duties in the city prison. The aforesaid commissioner of correction, under date of August 4, 1914, wrote to the deputy comptroller:

"This department is, of course, not concerned with his (Dr. McGuire's) appointment by various judges as an expert in lunacy proceedings."

The granting of the relief prayed for is opposed on the following grounds: (1) To pay a person in the petitioner's position, receiving a regular salary from the city, for extra work such as that for which he makes claim herein, would violate the spirit of section 1533 of the charter (Laws 1901, c. 466) and be contrary to public policy. (2) The court should not issue a writ of mandamus to compel payment of a claim where the appropriation from which it might have been payable is exhausted at the end of the year. (3) An action at law, and not a proceeding for a writ of mandamus, is the proper remedy if the petitioner is aggrieved.

[1] The pertinent part of section 1533 of the charter reads as follows:

"No member of the board of aldermen, head of department, chief of bureau, deputy thereof or clerk therein, or other officer of the corporation, shall be or become interested directly or indirectly, as contracting party, partner, stockholder or otherwise, in or in the performance of any contract, work, or business, or the sale of any article, the expense, price, or consideration of which is payable from the city treasury."

Though the petitioner is not a member of the board of aldermen, head of a department, chief of a bureau, deputy thereof, or clerk therein, the corporation counsel, while admitting that the petitioner "may not be an officer of the corporation," nevertheless seeks to bring him within the spirit of the charter provision. But the cases cited by him in his brief turn largely upon possible or probable neglect or misconduct arising from a conflict between duty and self-interest. Nor is Dr. McGuire holding two positions, as was the case in Fitch v. Mayor, 40 Hun, 512. Most reliance is placed upon the recent case of Schultze v. City of N. Y., 152 App. Div. 39, 136 N. Y. Supp. 715, affirmed without opinion 211 N. Y. 552, 106 N. E. 1042. This case merely held that the plaintiff therein, a coroner's physician, was "a city officer," expressly designated as such, and therefore clearly within the provisions of section 1533 of the charter. It should be noted, however, that Justice Miller concurred "in the result on the ground that under the circumstances disclosed there was no implied contract to pay for the services in question." Also Justice Dowling, who dissented, says in relation to the charter provision (152 App. Div. 45, 46, 136 N. Y. Supp. 719, 720):

"I do not believe that section 1533 of the charter of Greater New York prohibiting any officer of the corporation from being or becoming interested, directly or indirectly, 'in, or in the performance of, any contract, work or business, or the sale of any article, the expense, price or consideration of which is payable from the city treasury,' has any application to such a situation as this. *That section was intended to prevent city officials from profiting from ordinary city contracts, or from dealing officially with concerns in which they were open or undisclosed partners. The scope of the section is sufficiently indicated by the remedy provided, which is, that at the option of the comptroller, the contract may be forfeited.* Nor do I believe that plaintiff comes within its inhibition, for he is not, in my opinion, an officer of the corporation. 'The essential element in a public office is that the duties to be performed shall involve the exercise of some portion of the sovereign power, whether great or small, * * * and it can hardly be contended that a

clerk, performing routine duties in strict subordination to a public officer, and with no authority under the statute to do anything except where it is authorized and directed by such officer, is exercising any of the sovereign powers.' "

It is patent in the Schultze Case that the court is not clear that the plaintiff's services therein, for which he sought to recover, were not specifically *within the scope of his duties,* and it is further patent that he was called upon specifically as coroner's physician.   Contrast the case of Dr. McGuire.   His position is not specifically provided for by law, nor specifically designated by title or office.   It is a matter solely within the power and discretion of the commissioner of correction. Could not the commissioner of correction abolish the position at once? Again, he was under no duty whatsoever to testify as an expert in any one of the 31 cases in question.   He was not called as "visiting physician," but as an expert.

Furthermore, Dr. McGuire has not taken the oath of office provided for in section 10 of the Public Officers Law (Consol. Laws, c. 47), nor the oath specified in section 1548 of the charter.   It is conceded that Dr. McGuire was at liberty to have his own private office, where he could attend his own patients outside of his office hours—from 8 a. m. to 11 a. m., as "visiting physician."   In the absence of any proof, or even claim, that the services in question interfered with his duties in the city prison, and there being an utter absence of anything showing a possible conflict between his self-interest and his duties, I am of opinion that his case is wholly without the spirit and intention of section 1533 of the charter, and also wholly dissimilar to the Schultze Case.   Almost the identical question was raised by the comptroller of the city of New York in 1901, when he asked the corporation counsel as to the status of Dr. McGuire's predecessor, and whether he was entitled to recover for services similar to those involved on this application.   In a letter dated June 24, 1901, the corporation counsel said:

"There is some doubt as to whether he is in law an officer of the city government, and in any event I see nothing to prevent him, while holding a position in the department of correction, from receiving compensation for professional services rendered to and at the request of a county official.   In answer to your third question, I would state that it is not possible for me to ascertain from the papers submitted to me what the regular duties of Dr. Campbell as Tombs physician are.   But I have no doubt that these duties do not include the giving of expert testimony upon the retainer of the district attorney.   The doctor, of course, would be obliged, as any individual would be obliged, to attend in court upon a subpœna and give testimony with respect to matters within his personal knowledge concerning any person accused of crime provided the person who called him did not ask him for what is recognized as expert evidence.   Compensation for giving such expert evidence cannot be deemed to have been considered in fixing the salary paid to Dr. Campbell upon his employment by the city as Tombs physician."

Since that time, and up to the pending case, the comptroller has been regularly making the payments in question in accordance with the orders of the various judges of the Court of General Sessions.   The case of Macdonald v. Mayor, 32 Hun, 89, is quite in point.   There the plaintiff, appointed by the commissioners of charities and correction medical superintendent of the Asylum for the Insane at Ward's Island, and receiving a salary payable out of the appropriations for

the salaries of the officers and employés of the department of charities and correction, at the request of the district attorney, examined a person about to be tried upon an indictment for a felony, to ascertain her mental condition, and subsequently appeared upon the trial of the indictment and was examined by the district attorney. It was no part of his duties to render such services. In deciding whether the plaintiff was entitled to recover compensation for such services, Justice Noah Davis said (32 Hun, 91):

"This case, we think, very clearly establishes that the plaintiff, as the appointee of the commissioners of charities and corrections, is not an officer of the corporation within the meaning of section 59 of the Consolidation Act of 1882 (incorporated in section 1533, Charter). That section is not to be broadly construed, because its effect is to restrict the exercise of private rights by restraining a class of persons from becoming interested in the performance of contracts, work, or business, or the sale of articles in which, by general law, all persons may engage. It does not, therefore, apply to any one who is not within the description of persons included in the prohibition. The service rendered by Dr. Macdonald was in no sense within the range of duties which he owed to his employers, and there seems to be no reason why the district attorney, in seeking expert witnesses in a case involving a question of insanity, should be prevented from securing the services of one whose constant experience in connection with the insane, would naturally render him a competent and desirable witness. It is not necessary, we think, to examine any other of the authorities bearing more or less directly upon this question."

Though the department with which Dr. McGuire is connected is a city department, the payments ordered to be made to him are a *county charge*, not a city charge. In the Macdonald Case, supra, Justice Davis held that for that reason also the inhibition of the act did not apply to the plaintiff therein, saying (32 Hun, 92):

"It may also be said, although not necessary to the decision of the case, that the district attorney is an officer of the county of New York, and not of the city corporation; that the services rendered by Dr. Macdonald were for the county, and not for the city; and that the fund appropriated for the payment * * * is appropriated to extinguish county and not city liabilities. Legally speaking the payment is not made out of the city treasury, and for that reason also the inhibition of the act does not extend to this case."

And in Mayor, etc., of N. Y. v. Sands, 105 N. Y. 210, at page 222, 11 N. E. 820, 825, Ruger, C. J., said:

"It is claimed by the respondent that, inasmuch as the contract between Connelly and Sands provided for the payment of the same commission for negotiating city, as well as county, bonds, the defendant came under the provision of section 115 of chapter 137 of the Laws of 1870, prohibiting city officers from being directly or indirectly interested in any contract, work, or business, or the sale of any article, the expense, price, or consideration of which is paid from the city treasury. The proof fails to show that Sands rendered any services to the city or made any claim against it in respect to this check. If the contract, so far as it provided for payment of services rendered the city, was void, we think it was divisible, and could be enforced, so far as it was authorized by law. The parties in fact did separate it, and no performance was attempted, except in relation to the county loan. *We think it was competent for a city officer to render services to the county or any other employé outside of the city and charge and receive a compensation for such services.*"

[2] 2. Section 658 of the Code of Criminal Procedure provides:

"When a defendant pleads insanity as prescribed in section three hundred and thirty-six, the court in which the indictment is pending, instead of proceeding with the trial of the indictment, may appoint a commission of not more than *three disinterested persons*, to examine him and report to the court as to his sanity at the time of the commission of the crime. The commission must summarily proceed to make their examination. Before commencing they must take the oath prescribed in the Code of Civil Procedure, to be taken by referees. They must be attended by the district attorney of the county, and may call and examine witnesses and compel their attendance. The counsel of the defendant may take part in the proceedings. When the commissioners have concluded their examination they must forthwith report the facts to the court with their opinion thereon."

Section 662a, Id., provides:

"The *costs* of any commission of lunacy, pursuant to the provisions of this article, shall be a *charge upon the county* in which the commission shall have been executed. The commissioners are entitled to such compensation for their services as the court may direct."

In opposition to the petitioner's claim the corporation counsel cites a portion of section 1542 of the Greater New York Charter, reading as follows:

"It shall be the duty of the heads of all departments and of all officers of said city, and of all boards and officers charged with the duty of expending or incurring obligations payable out of the moneys raised by tax in said city, or any of the counties contained within its territorial limits, so to regulate such expenditures for any purpose or object, that the same shall not in any one year exceed the amount appropriated by the board of estimate and apportionment for such purpose or object; and no charge, claim or liability shall exist or arise against said city, or any of the counties contained within its territorial limits, for any sum in excess of the amount appropriated for the several purposes."

It appears that the sum of $9,000 was appropriated in the city budget for each of the years 1912, 1913, and 1914 for:

"Miscellaneous, New York County. Contingencies—* * * Disbursements and fees under section 658, Code of Criminal Procedure."

Against the payment of part of the petitioner's charges is urged lack of appropriation, or, more specifically, that the appropriated funds out of which such charges had been paid in the past were for the years 1912 and 1913 exhausted at the time when part of the plaintiff's services were rendered. From the papers presented to me it appears that of the fund appropriated for 1913 $178.20 was transferred to the fund for the reduction of taxation; that the sum of $9,000 was merely an estimate of what it would take to pay the disbursements under section 658 of the Criminal Code for the current year and classed under the head of "Contingencies"; that the bookkeeper in charge in the department of finance, division of disbursements, testified that "no payment is ever finally disallowed by us on account of insufficient funds on this account"; that when the account is exhausted special revenue bonds are issued for the payment of the amounts directed to be paid and for the expenses incurred; that such practice is "mandatory" (it is at least authorized under section 188, subd. 7, Charter); that after the appropriation for 1913 had been exhausted, in order to

cover various orders made by the judges of General Sessions directing payments under section 658 of the Criminal Code, such accounts were transferred to the revenue bond fund, so that payment might be made.

To uphold the contention of the corporation counsel would lead to an extraordinary situation. Under section 658 of the Criminal Code, supra, the court may appoint a commission to determine the defendant's sanity. Is it reasonable to contend that on October 1st, for example, such commission could be had, but not on October 2d, because on the second day the appropriated fund had been exhausted? Can courts of justice guide their procedure upon a question of dollars and cents? The court has the power to appoint commissioners. The "costs" of the commission "shall be a charge upon the county in which the commission shall have been executed." The provision for the compensation of the commissioners themselves is *separate*. What are the "costs" of the commission? Their proper and reasonable expenses in carrying out their affirmative duty of inquiry. In passing upon the specific question of insanity they would naturally call an expert upon that subject. That Dr. McGuire is and was such a person is not questioned. But, it is argued, the commission has no power to employ a physician, and in any event on all the commissions in question one of the three men was a physician. So far as the latter fact is concerned, it is not required by the law. And, as to the power of the commission, they are charged with a duty, and the Code makes the "costs" of their performing that duty a county charge. Of course, such "costs" cannot be unconscionable or excessive.

But that is not the question here, because such charges are not only certified as correct and proper by judges of General Sessions (certainly more proper than the suggestion that they be certified by the commissioners themselves), but are admittedly in themselves distinctly moderate. The large stenographic fees in each of the 31 cases where Dr. McGuire gave his expert testimony have presumably been paid. To class one expense as "costs," and not the other, would be unreasonable. And on the specific question as to whether the commissioners had the power to call an expert, we may easily suppose a case where the defendant, whose sanity was in question, was able, because he could afford to do so, to call numerous experts at his own expense. Are the commissioners in so important a matter to have their hands so tied that they cannot have the aid of their own impartial experts, simply because the Code does not edit the word "costs" to include such experts? The very generality of the word "costs," considering the proceedings in relation to which it is used, hardly calls for specific subdivision. In reason, I cannot hold that the costs of the commissions on insanity should not be paid because the appropriated funds have been exhausted without also holding that the commissioners themselves should not be paid for the same reason. To hold the latter point would obstruct justice and would be unconstitutional as tending to deprive defendants of rights which courts under legislative authority have provided that such defendants may have.

But even this must be academic reasoning, since, in my opinion, as a county charge the comptroller must exercise the authority vested in

him by section 188, subdivision, 7, Charter, to make provisions for payment of reasonable and proper "costs" of commissions properly appointed under section 658 of the Code of Criminal Procedure. The said charter provision reads as follows:

"The comptroller is authorized to issue [certificates of indebtedness or other evidence of indebtedness to be redeemed out of the tax levy for the year next succeeding the year of their issue] to provide the means necessary to make payments for the following purposes: * * * 7. To provide for the payment of claims, charges, expenses and appropriations which have been or may be lawfully payable by the city of New York, as hereby constituted, and the several counties wholly included within its limits, and for which no other provision for payment has been made."

Furthermore, section 230, subdivision 6, of the Greater New York Charter provides:

"The board of estimate and apportionment shall, in addition to such other amounts as it may in its discretion provide for public purposes in the city of New York and the several counties wholly contained within its territorial limits, annually include in its final estimate the following sums, which shall annually be raised and appropriated: * * * Sixth. Such sum as may be necessary to pay the salaries of county officers within the counties of New York, Kings, Queens and Richmond, and likewise all other expenses within said counties and each of them, which are county as distinguished from city charges and expenses."

See opinion of Mr. Justice Blackmar in O'Loughlin v. Prendergast, 156 N. Y. Supp. 1098.

[3] 3. In view of the foregoing conclusions, the contention that mandamus is not the proper remedy for the petitioner becomes of no importance. People ex rel. Franklin v. Fetherston, 168 App. Div. 416, 153 N. Y. Supp. 325. The brief of the corporation counsel says:

"We think that the court is in possession of all the facts necessary to dispose of this case."

Also he contends that:

"Not even in an action at law could such sum be recovered under the circumstances shown herein."

The question presented is therefore very clear. To frame it by pleadings in an action at law is unnecessary. The facts are perfectly clear and undisputed. I have ruled upon the law involved. Under the circumstances this is a case for the exercise of the discretionary power of the court, and I grant the motion, with $50 costs.

Settle order on notice.