(172 App. Div. 740)

SEAMAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.	May 12, 1916.)

1. MUNICIPAL CORPORATIONS ☞231(1)—OFFICERS—CONTRACTS FOR SERVICE—VALIDITY.

A contract of an employé of the highway department of a city to do extra work as an architect for municipal buildings and to receive compensation therefor is repugnant to the common law, as permitting a clash of interests of the city and the individual.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657, 658, 663; Dec. Dig. ☞231(1).]

2. MUNICIPAL CORPORATIONS ☞231(1)—OFFICERS—CONTRACTS FOR SERVICE—VALIDITY.

To invalidate the contract of a city employé to do extra work and receive compensation therefor, it is not necessary that he should make any advantage by the bargain, but the contract is void at all events.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657, 658, 663; Dec. Dig. ☞231(1).]

3. MUNICIPAL CORPORATIONS ☞231(1)—OFFICERS—CONTRACTS FOR SERVICE—VALIDITY.

The fact that a city employé was granted a leave of absence from his regular duties while acting under a contract to do extra work as an architect for the city will not validate the contract for extra services, being a mere subterfuge.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657, 658, 663; Dec. Dig. ☞231(1).]

4. MUNICIPAL CORPORATIONS ☞231(1)—"OFFICER"—CONTRACTS FOR SERVICE—VALIDITY.

The contract of an employé of the highway department to do extra work as an architect for compensation for the city is invalid under Greater New

York Charter (Laws 1901, c. 466) § 1533, providing that no member of the board of aldermen or other officer of the corporation shall become interested in the performance of any contract or work for the city; such an employé being an "officer" within the meaning of the charter.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657, 658, 663; Dec. Dig. ☞231(1).

For other definitions, see Words and Phrases, First and Second Series, Officer.]

5. MUNICIPAL CORPORATIONS ☞231(1)—OFFICERS—INDIVIDUAL INTEREST—DECLARATION OF COMMON LAW—LIMITATIONS.

Greater New York Charter, § 1533, prohibiting municipal officers from becoming interested in contracts for city work, being declaratory of the common law, will not be construed as limiting the common-law rule that a contract of a city employé to do work for the city aside from his regular duties, for compensation, is void.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657, 658, 663; Dec. Dig. ☞231(1).]

6. MUNICIPAL CORPORATIONS ☞231(1)—OFFICERS—CONTRACTS FOR SERVICE—VALIDITY—FORFEITURE.

Greater New York Charter, § 1533, providing that all contracts in which municipal employés become interested in work for the city shall, at the option of the comptroller, be forfeited and void, means merely that the city may hold any officer if it chooses, but to invalidate the contract as against the city it is not necessary that forfeiture be declared.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657, 658, 663; Dec. Dig. ☞231(1).]

7. MUNICIPAL CORPORATIONS ☞231(1)—OFFICERS—CONTRACTS FOR SERVICE—VALIDITY—PARTIAL PERFORMANCE.

The contract of a city employé to do extra work for the city aside from his regular duties and receive compensation therefor, being void ab initio, cannot be validated by partial performance or full performance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 657, 658, 663; Dec. Dig. ☞231(1).]

Appeal from Trial Term, Queens County.

Action by Preston B. Seaman against the City of New York. From a judgment for defendant, and an order denying motion for new trial, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH, and PUTNAM, JJ.

Nicholas W. Hacker, of New York City, for appellant.

William E. C. Mayer, of New York City (Terence Farley and R. Percy Chittenden, both of New York City, on the brief), for respondent.

JENKS, P. J. The jury at Trial Term returned a general verdict for the defendant. The basis of this action is an alleged contract, made by the president of the borough of Queens, for plaintiff's services as an architect in the preparation of plans, specifications, contract, etc., for the erection and completion of the borough building and county court for the borough of Queens, and for supervision of the work, whereby the plaintiff was to be paid the usual, customary, and legal commissions as allowed to architects. The plaintiff complains that he proceeded with his contract as far as the defendant would permit,

and so far as to enable prospective bidders and contractors to make estimates. He sues to recover $32,147.50, a percentage of the estimated cost of the building, $1,285,900, and $32,147.50 damages for the breach of the contract, or in all for $64,295.

[1] Under a plea of the defendant, the proof justified a finding that the plaintiff, during the period of his said employment as such architect, held a place as a draftsman in the department of highways of the said borough at an annual salary of $1,500. The learned court instructed the jury, if it should so find, to return the verdict for the defendant. I think that the instruction was right. Contracts of this character are repugnant to the common law, which recognizes the possible clash of individual interest with that of the city as employer of the individual. In Smith v. City of Albany, 61 N. Y. 444, it is said, per Gray, C., that the rule and the reason are well stated by Justice Story in his treatise on Agency. The words of that writer are then quoted, and the court concludes that it is "a rule of necessity, which the test of experience has rendered inflexible." In Mullaly v. The Mayor, 3 Hun, 662–665, affirmed 62 N. Y. 636, the general policy of the rule is discussed by the court per Daniels, J. And in Schultze v. City of New York, 152 App. Div. 39–43, 136 N. Y. Supp. 715, affirmed 211 N. Y. 552, 106 N. E. 1042, the rule is recognized as one of the common law. Beebe v. Supervisors of Sullivan Co., 64 Hun, 378, 19 N. Y. Supp. 629, affirmed on opinion 142 N. Y. 631, 37 N. E. 566; Greenhood on Public Policy, p. 545, citing Mullaly's Case, supra; Dillon on Municipal Corporations (5th Ed.) § 772.

[2] The inhibition is general. As was declared in Smith's Case, supra, it is not necessary that the agent should make any advantage by the bargain, for whether he has or not there is no obligation upon the principal. See, too, Richardson v. Crandall, 48 N. Y. at page 362. Therefore it is quite aside the mark to consider whether in the case at bar the plaintiff could, with apparently plenary power over the cost of the structure within the appropriation, increase his fees, measured by the percentage of the cost, or whether, on the other hand, such limitation would in a degree safeguard the defendant.

[3] Nor do I think that the rule can be avoided by the circumstance that there was a leave of absence to the employé from his regular duties without pay during the period contemplated by the contract of his services as architect. Such a step, no matter what the motive may be, is in principle a subterfuge, and does not affect the vice that the employé is still in the service of the city.

[4, 5] I think that the contract also offends the charter of the Greater New York. Schultze v. City of New York, supra. Section 1533 is prohibitive. It is true that the plaintiff was not a "member of the board of aldermen, head of department, chief of bureau, deputy thereof or clerk therein"; but I think that he was within the general term that follows immediately upon the words "clerk therein," namely, "or other officer of the corporation." Before discussing the purview of the language, we must remember that the statute is declarative of the common law (Schultze Case, supra, 152 App. Div. at page 43, 136 N. Y. Supp. 715), which declares, as we have seen, a general, inflexible rule applicable to all who serve. No good reason

appears why this rule should be restricted by statute to any particular placeholders of the city, although the opportunities of those specifically mentioned in this statute to work harm upon the city may be greater than those of others. In consideration of the purview of the words "or other officer of the corporation," we must bear in mind that the words "office" and "officer" are vague terms, variable in meaning, determined by the particular use and in consideration of the purpose of the statute. State v. Kiichli, 53 Minn. 147, 54 N. W. 1069, 19 L. R. A. 779. In Rowland v. Mayor, etc., City of New York, 83 N. Y. 372–376, the court say:

"Whether we look into the dictionary of our language, the terms of politics, or the diction of common life, we find¹ that whoever has a public charge or employment, or even a particular employment affecting the public, is said to hold or be in office. However, therefore, the signification of the word used is ascertained, it will comprehend the position of the plaintiff as stated upon the record; for, although his functions may be those of service, his employment is by the public, and the duties intrusted to him are official and a public charge. People ex rel. Henry v. Nostrand, 46 N. Y. 375; People ex rel. Kelly v. Common Council, 77 N. Y. 503, and cases cited at page 508 [33 Am. Rep. 659]."

In Dempsey v. N. Y. C. & H. R.˙R. R. Co., 146 N. Y. at page 293, 40 N. E. at page 868, the court say:

"In Henly v. The Mayor of Lyme, 5 Bing. 91, Best, C. J, answering the question, 'What constitutes a public officer?' says: 'In my opinion every one who is appointed to discharge a public duty and receive a compensation, in whatever shape, from the crown or otherwise, is constituted a public officer.'"

In People ex rel. Kelly v. Common Council, 77 N. Y. 503–507, the court discusses the term and approves the definition of Sanford, Ch., in Case of Wood, 2 Cowen, 1 (note, page 30):

"An office is a public charge or employment, and the term seems to comprehend every charge or employment in which the public are interested."

See, too, People ex rel. Washington v. Nichols, 52 N. Y. 478–484, 11 Am. Rep. 734; Attorney General v. Drohan, 169 Mass. 534, 48 N. E. 279, 61 Am. St. Rep. 301.

I think, then, that the plaintiff, when holding the place of a draftsman in the department of highways in the borough of Queens, was within the purview of the expression "or other officer of the corporation," as the expression was used for the purposes of this statute.

[6] It is contended that the court erred in refusal to charge that there was no evidence that the comptroller "has exercised any such option," inasmuch as the contract was voidable, not void. There was no issue raised upon this question by pleading or by proof. I cannot think that the expression in the said section 1533, "All such contracts in which any such person is or becomes interested as above described shall, at the option of the comptroller, be forfeited and void," means that, unless the comptroller forfeits or avoids them, they are legal obligations upon the city, enforceable by the placeman as promisee, or, in other words, that a contract prohibited by the common law, and prohibited by a statute which is adjudged to be declaratory of the common law (Schultze's Case, supra, 152 App. Div.

at page 43, 136 N. Y. Supp. 715) is by that very statute declared in effect valid as to the promisee, unless the city affirmatively, through its comptroller, forfeit or avoid it. The general purpose of the statute is inhibitive of all such contracts, and the placeholder who is concerned therein is declared guilty of a misdemeanor. Section 1533, Greater New York Charter. See, too, section 1561.

The policy of the statute in thus declaring such contracts voidable, or subject to forfeit, does not imply that the contract is valid so far as the promisee is concerned, unless the contract is avoided or is forfeited. The purpose thereof may be to enable the city to hold the contract valid, if it elect to do so. The parties to the contract are thus regarded as not in pari delictu. See Schermerhorn v. Talman, 14 N. Y. 93–123; Browning v. Morris, 2 Cowp. 790–792, per Lord Mansfield; Duval v. Wellman, 124 N. Y. 156–161, 26 N. E. 343. In Matter of Clamp, 33 Misc. Rep. 250, 68 N. Y. Supp. 345, the explanatory comment of Andrews, J., is entitled to consideration in view of the long service of the judge in the office of the corporation counsel before he came to the bench.

"It may well be that, as to other cities of the state, the Legislature did not think it necessary or desirable to provide that illegal bids for city contracts might be accepted or rejected, at the option of some officer of the city, and, at the same time, have considered that, as to the city of New York, the provision of the charter giving the comptroller discretion in such matters ought to be left in force; and a good reason for such a difference readily suggests itself. The contracts to be made on behalf of the city of New York by public letting are very numerous and involve very large sums of money—in some years many millions of dollars—and it is well known that, through mistake or mere inadvertence, bids are often irregular in form; and it has been found to be extremely desirable that there should be a power in the comptroller to waive irregularities and illegalities which are not prejudicial to the interests of the city and its taxpayers."

So far as the grievance of this plaintiff is concerned, it is but necessary to decide that the court did not err in the refusal of his request for the instruction. There was no error, in any event, unless the law permitted recovery by the plaintiff upon such a contract if the comptroller of the city had not avoided it or forfeited it.

[7] Neither performance nor part performance could create a valid claim, and the plaintiff is not entitled to compensation for the services performed. Mullaly v. The Mayor, supra, 3 Hun, at page 665.

Without discussion of the other questions raised upon this appeal, I advise that the judgment and order be affirmed, with costs. All concur.