SMITH, Judge.
By petition for common law writ of cer-tiorari, petitioner Johnson, councilman and president of the council of the City of Jacksonville, seeks review of an order of the Duval County circuit court denying a temporary injunction against proceedings by the respondent council members for removal of Johnson as council president. Petitioner also seeks a writ, pursuant to article V, § 4(b)(3), Florida Constitution, to stay those proceedings pending our determination of the matter. We expedited and heard the ease and, after deliberation, denied the stay and announced our intention to deny certiorari. This opinion elaborates on the views expressed after the hearing.
All legislative powers of the consolidated government of Jacksonville and Du-val County are vested in the council by the charter law, chapter 67 — 1320, § 5.06, Fla. Laws. The council by majority vote selected councilman Johnson as its president July 13,1976. On September 28,1976, the council passed an ordinance setting forth grounds and procedures for removal of council officers. A majority of the council then invoked those procedures by formal demand for Johnson’s removal as president for alleged conduct unbecoming an officer of the council, disorderly intoxication and disorderly conduct amounting to a breach of the peace. The conduct referred to in the specifications was allegedly committed in August 1976, before passage of the ordinance.
Jacksonville’s charter provides, in a section pertaining to Meetings of the council:
“The council shall, at the first meeting in each year, select one of its members as the president of the council and one of its members as president pro tempore. The president of the council shall preside at all meetings of the council during the year in which he is elected, and in his absence the president pro tempore shall preside.” Ch. 67-1320, § 5.07, Fla.Laws (emphasis added).
The charter contains no explicit provision for the removal of the council president during his term.[1] Conceiving that as coun *1302 cil president he is an officer not only of the council but also of the city or County, Johnson’s position is that he may not be removed from the presidency in midterm except by means specified in the charter, of which there are none,[2] or by the Governor and Senate pursuant to the Florida Constitution. Article IV, § 7(a) and (b) of the Constitution provides for the removal of county officers as follows:
“(a) By executive order stating the grounds and filed with the secretary of state, the governor may suspend from office . . . any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony
“(b) The senate may . . . remove from office or reinstate the suspended official . . . .”
Article IV, § 7(c) provides for the removal of “any elected municipal officer” as follows:
“(c) By order of the governor any elected municipal officer indicted for crime may be suspended from office until acquitted . . . unless these powers are vested elsewhere by law or the municipal charter.”
The critical issue here is not whether Johnson as a duly elected member of the council is a city or county officer. Plainly, Jacksonville council members are county officers for purposes of removal under the Constitution’s article IV, § 7(a) and (b), for they exercise in Duval County the powers and duties exercised by county commissioners elsewhere. Article VIII, § 1(e), Florida Constitution; § 112.49, F.S.; In re Advisory Opinion, supra n. 2. A member of the council may therefore be removed as such only by the Governor and Senate, by recall by the voters, or by the special procedures adopted in Jacksonville for violation of its Code of Ethics, supra n. 1. Here there is no effort by the council, nor any claim of right, to remove Johnson as councilman. The council seeks only to remove councilman Johnson as its president.
An “officer” has been defined as “one who has a public duty, charge or trust, conferred by public authority, for public purposes, which is not transient, occasional, or incidental, but durable, permanent, and continuous . . . .” 3 E. McQuillin, Municipal Corporations § 12.29, at 169 (3d ed. rev. 1973); State ex rel. Davis v. Botts, 101 Fla. 361, 134 So. 219 (1931); State ex rel. Clyatt v. Hocker, 39 Fla. 477, 484, 22 So. 721, 722-23 (1897). The council presidency would seem by that definition to be, at least for some purposes, an office of the city or county. But “office” and “officer” are slippery words with uncertain implications.[3] If the council presidency is a city or county office within the application of the removal provisions in article IV, § 7, no reason is apparent why the presidency should not also be considered an “office” within the meaning of article II, § 5(a) of the same *1303 Constitution, which forbids that any person hold “more than one office under the government of the state and the counties and municipalities . . ..” Thus, Johnson’s argument generates an immediate contradiction: by charter only a council member may be president of the council, but by Constitution that person may not hold both offices simultaneously. It might be argued also that, if the council president is in any sense an “elective . . . county officer,” he must be elected by the people, Jacksonville’s charter to the contrary notwithstanding, on the first Tuesday after the first Monday in November of each even-numbered year. Article VI, § 5, Florida Constitution.
We believe Johnson’s argument concerning “offices” and “officers,” though resourcefully conceived, grasps the wrong end of the stick. The more appropriate considerations are the nature of the council presidency, the constituency to whom the president is responsible and any constitutional or statutory restrictions on council autonomy.
The council president is first and foremost the presiding officer of a legislative body. While the president has other duties in contingencies — notably to become mayor if that office is vacant[4] — the president’s permanent and continuous duty is to preside over deliberations of a parliamentary body. In this respect, the president’s relationship to the council is necessarily more intimate and responsible than any other “officer” who performs public duties independently, though by council appointment. Thus distinguished are such decisions as Burklin v. Willis, 97 So.2d 129 (Fla.App. 1st, 1957), and State ex rel. Gibbs v. Bloodworth, 134 Fla. 369, 184 So. 1 (1938), which held that the vice mayor and municipal judge of Port Orange and the city clerk of Miami, respectively, could not be removed by the city council and city commission of those cities, though each body was the appointing authority, except by a two-thirds vote and for cause specified in a statute then existing, § 165.18, F.S.1957, and § 2948, C.G.L. 1927. We have said that “[ujnder the common law an officer could be removed only for cause and after notice and an opportunity to be' heard.” Burklin, 97 So.2d at 131. But the common law otherwise provided for the removal by legislative bodies of their presiding officers. L. Cushing, Law and Practice of Legislative Assemblies §§ 297, 299 (9th ed. 1874):
“It is essential ... to the satisfactory discharge of the duties of a presiding officer, that he should possess the confidence of the body over which he presides, in the highest practicable degree. It is apparently for the purpose of securing this necessary confidence, that the presiding officer is required to be chosen by the assembly itself, and by an absolute majority of votes; [and] that he is removable by the assembly at its pleasure
“. . . The presiding officer, being freely elected by the members by reason of the confidence which they have in him, is removable by them, at their pleasure, in the same manner, whenever he becomes permanently unable, by reason of sickness, or otherwise, to discharge the duties of his place, and does not resign his office; or whenever he has, in any manner, or for any cause, forfeited or lost the confidence upon the strength of which he was elected.”
Jefferson wrote his Manual of Parliamentary Practice early in the Republic. That work, which was “regarded by English parliamentarians as the best statement of what the law of Parliament was at the time Jefferson wrote it,” maintained that a Speaker chosen by the House of Representatives “may be removed at the will of the House . . . .” L. Deschler, Constitution, Jefferson’s Manual and Rules of the House of Representatives § 284 at 105, § 315 at 127 (1943). Decisions honoring *1304 that relationship between a legislative body and its chosen presiding officer, and according therefore to a city council or other legislative body the right to remove its president or speaker at pleasure, include State ex rel. Childs v. Kiichli, supra n. 3, In re Speakership of the House of Representatives, 15 Colo. 520, 25 P. 707 (1891); Watson v. Common Council of City of Marysville, 140 P.2d 874 (Cal.App.3d, 1943); and Gowey v. Siggelkow, 85 Idaho 574, 382 P.2d 764 (1963). See also 4 McQuillin, Municipal Corporations § 13.19, at 500 (3d ed. rev. 1968):
“Where the body has the power to choose its own presiding officer from its own members, the office is held at will and authority of a majority of the members, and hence the body has the inherent power to remove such officer at any time, unless prohibited by some express constitutional or statutory provision.”
The Florida Constitution does not restrict the Jacksonville council’s inherent right to control its presidency, unless that is done by implication in vesting in the Governor and Senate the power to remove municipal and county officers. Article IV, § 7. Our stated doubts concerning the applicability of that section are reenforced by realization that the Governor’s power to suspend includes also the power to “fill the office by appointment for the period of suspension.” Sec. 7(a), (c). If it is merely improbable that the Governor is thus empowered to remove the council president without removing him also as councilman, it is inconceivable that the Governor, and not the council, should have power to appoint its new president. We are confident that article IV, § 7 was not intended to authorize gubernatorial suspension and replacement of the president of the Florida Senate or the speaker of the House of Representatives; and it is no less implausible that such a grant of power was intended for suspension and replacement of the council president, who is no less a city or county officer than the Senate president and House speaker are state officers. We find no constitutional abridgement of the council’s power to remove its president.
Nor is there any impediment by statute of general application. Sec. 165.18, F.S. 1971, was regarded in both Burklin and Bloodworth as legislative reinforcement of the common law doctrine that a municipal officer may be removed only for cause, after notice and opportunity for hearing. But even if the council president should be regarded for removal purposes as an officer of the city rather than of the county, apparently contrary to the Supreme Court’s Advisory Opinion, supra, note 2, § 165.18 was repealed in 1974 by the Formation of Local Governments Act, ch. 165, F.S., ch. 74-192, Fla. Laws. The only remaining statute touching on removal powers, § 112.49, F.S. 1975, is concerned only with persons who, because they exercise the powers and duties of a county officer, are removable by the governor and Senate under article IV, § 7, Florida Constitution. As we said above, the council president is not such an “officer.”
The final question is whether Jacksonville’s charter law restricts the council’s control of its presidency. It is argued that the charter provides for a one-year term in the presidency, and thus by implication impedes removal at will:
“The council shall, at the first meeting in each year, select one of its members as the president of the council The president of the council shall preside at all meetings of the council during the year in which he is elected . . . .” Ch. 67-1320, § 5.07.
We are persuaded by the Minnesota Supreme Court’s disposition of a similar argument, based on a similar charter provision:
“The sole purpose of the statute was merely to regulate the time when, and the manner in which, the city council should organize and elect their presiding officer .
“A city council is a local legislative body and in creating it the legislature, by implication, within the limits prescribed, conferred upon it all the powers and privileges in the manner of conducting their own proceedings usually recognized by parliamentary law as belonging to such *1305 bodies; and it would require a clear and explicit expression of legislative intention to that effect to justify the conclusion that it was the design to deprive this city council of the universally recognized parliamentary right of control over their presiding officer. Such an intention is not to be inferred from the mere fact that, in order to insure a prompt and orderly organization of that body, the legislature has given directions as to the time and manner of doing so.” State ex rel. Childs v. Kiichli, 53 Minn. at 153-54, 54 N.W. at 1070. See also Gowey v. Siggel-kow, supra.
We think it unlikely that the legislature would have created an irrevocable “term” for the council presidents in a section of the charter modestly entitled “Meetings.” The legislature’s use of the mandatory “shall preside” in describing the president’s duty implies no tenure, for similar imperatives are used in describing the duties of the council auditor and the council secretary, concerning whom, presumably, the council has untrammelled-removal power.[5]
The essential character of the council presidency is not changed by the charter provision for the president’s succession to the vacant office of mayor. Sec. 6.05, n. 4 supra. Petitioner expresses apprehension that, given unrestrained power to remove its president, the council may learn of an impending vacancy in the office of mayor, depose its president and elect a new one who shall become mayor. So it may. The council may not depose the new mayor, however. For section 6.05 provides that the person thus becoming mayor
“shall cease to be a councilman during his term of mayor, and his seat on the council shall become vacant.”
The charter thus honors the proscription of article II, § 5(a) of the Constitution, that no person shall hold more than one office— councilman and mayor — under the government of Jacksonville.
What we have said disposes of petitioner’s other principal contentions: that the president may not be removed for violation of conduct standards enacted by ordinance after the conduct complained of, and that the council here improperly deviated from the removal procedures it recently adopted. The council may remove its president on grounds and by procedures satisfactory to it. That the council may thus lawfully act at any time, for any reason and in any way does not require that the council act arbitrarily. Citizens may think better of a council that prescribes an orderly hearing process and gives its presiding officer notice — even retrospective notice — of the grounds on which it will entertain removal proceedings. But that is the council’s affair, not the court’s.
Following our hearing of this matter we announced that no petition for rehearing would be entertained, due to the exigency of then imminent proceedings before the council. The exigency passed following oral announcement of our decision. Because the issue we here decide is one of lasting importance in the government of Jacksonville, we withdraw our inhibition of rehearing and will entertain any petition appropriate under Rule 3.14, F.A.R. The petition for writ of certiorari is
DENIED.
RAWLS, Acting C. J., and MILLS, J., concur.

. Petitioner points out that, by contrast, directors of executive departments of the consolidated government are appointed by and serve “until removed by the mayor” and the chairman of the child services advisory board is made to “serve at the will of the board.” Ch. *1302 67-1320, §§ 7.102, 12.504, Fla.Laws. Section 17.08 provides for recall by the voters of any “officer elected in any consolidated government . . . election” and section 20.07(b) provides for suspension or removal if an elected official violates §§ 20.02-.06, the “Code of Ethics.” The ethics code does not proscribe the conduct of which Johnson is accused.

. Sec. 112.49, F.S. 1975, provides that “any officer, official or employee” of a consolidated city-county government “who exercises the powers and duties of a county officer” shall be deemed a county officer and be removed pursuant to art. IV, § 7 of the Constitution. The Supreme Court recently held that Jacksonville’s mayor is a “county officer” by this definition, and is therefore removable by the Governor under article IV, § 7(a) rather than under § 7(c). In re Advisory Opinion to the Governor Request of July 12, 1976, 336 So.2d 97 (Fla. 1976).

. State ex rel. Childs v. Kiichii, 53 Minn. 147, 155, 54 N.W. 1069, 1071 (1893): “The words ‘office’ and ‘officer’ are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used, and, to determine it correctly in a particular instance, regard must be had to the subject-matter in reference to which the terms are used.” See also Seaman v. City of New York, 172 App.Div. 740, 743, 159 N.Y.S. 563, 566 (1916), affd. 225 N.Y. 648, 121 N.E. 889 (1919); 3 McQuillin, supra, at § 12.29.

. Sec. 6.05 of Jacksonville’s charter provides that “the president of the council shall serve as mayor until his successor is elected and qualified” if the mayor dies, resigns, removes his residence from Duval County, or is removed from office when a general consolidated government election will occur within two years.

. “Section 5.10. Auditor. The council shall appoint an auditor who . shall be responsible for the performance of the duties provided in this section and such other duties as may be assigned him by the council. .
“Section 5.12. Secretary and Other Council Employees. The council shall select a secretary who shall keep the records of the council